**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
OLGA AKSELROD (NY Bar No. 4132825) (Appearance *Pro Hac Vice*)
oakselrod@aclu.org
VERA EIDELMAN (CA Bar No. 308535)**
veidelman@aclu.org
RACHEL MEEROPOL (NY Bar No. 4100954) (Appearance *Pro Hac Vice*)
rmeeropol@aclu.org
ALEXIS AGATHOCLEOUS (NY Bar No. 4227062)*
aagathocleous@aclu.org
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2659

*Attorneys for Plaintiffs*

*(Additional Counsel on Following Page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ARGHAVAN SALLES; ABIGAIL HATCHER; ANDREA ROSSO; ANN D. COHEN-WILSON; DOLORES ALBARRACÍN; HEIDI MOSESON; JADE PAGKAS-BATHER; JONATHAN KYLE DAW; KATIE EDWARDS; KELTON MINOR; MICHAEL D. GREEN; SARA JACKSON; SUZANNE BELL; JORDAN DOE 1; JORDAN DOE 2; JORDAN DOE 3; and JORDAN DOE 4, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

NATIONAL INSTITUTES OF HEALTH; JAY BHATTACHARYA, *in his official capacity as Director of the National Institutes of Health*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., *in his official capacity as Secretary of the United States Department of Health and Human Services*; and UNITED STATES DOGE SERVICE,

Defendants.

Case No. 3:26-cv-10510-SK

**NOTICE OF MOTION AND MOTION FOR PROVISIONAL CLASS CERTIFICATION**

Judge: Hon. Sallie Kim
Courtroom: Courtroom C, 15th floor
Date: Nov. 16, 2026
Time: 9:30 a.m.

* Application for *Pro Hac Vice* Admission Forthcoming
**Out-of-State Licensee Renewal Pending

*(Additional Counsel on Behalf of Plaintiffs)*

**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION OF NORTHERN CALIFORNIA**
GRAYCE ZELPHIN (CA Bar No. 279112)
gzelphin@aclunc.org
CHESSIE THACHER (CA Bar No. 296767)
cthacher@aclunc.org
NEIL K. SAWHNEY (CA Bar No. 300130)
nsawhney@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

**PROTECT DEMOCRACY PROJECT**
SHALINI AGARWAL (DC Bar No. 990963) (Appearance *Pro Hac Vice*)
shalini.agarwal@protectdemocracy.org
2020 Pennsylvania Avenue, NW, Suite 163
Washington, DC 20006
KENNETH PARRENO (TX Bar No. 24130477)*
kenneth.parreno@protectdemocracy.org
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
LISA S. MANKOFSKY (DC Bar No. 411931) (Appearance *Pro Hac Vice*)
lmankofsky@cspi.org
OSCAR HEANUE (DC Bar No. 90036939) (Appearance *Pro Hac Vice*)
oheanue@cspi.org
1250 I Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 777-8381

**JACOBSON LAWYERS GROUP PLLC**
DANIEL F. JACOBSON (DC Bar No. 1016621)*
dan@jacobsonlawyersgroup.com
LYNN D. EISENBERG (DC Bar No. 1017511) (Appearance *Pro Hac Vice*)
lynn@jacobsonlawyersgroup.com
STEPHEN K. WIRTH (DC Bar No. 1034038) (Appearance *Pro Hac Vice*)
stephen@jacobsonlawyersgroup.com
5100 Wisconsin Avenue, NW, Suite 301
Washington, DC 20016
Telephone: (301) 823-1148

* Application for *Pro Hac Vice* Admission Forthcoming

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... 4

NOTICE OF MOTION AND MOTION .......... 7

INTRODUCTION .......... 8

BACKGROUND .......... 10

- I. Defendants' Challenged Policies Replace Scientific Merit Review with Viewpoint-Based Screening .......... 10
- II. Defendants' Challenged Policies Harm Researchers Whose NIH Grants Were Terminated (Termination Class). .......... 11
- III. Defendants' Challenged Policies Harm Researchers Whose Grants or Applications are Subject to Denial, Rephrasing, Renegotiation, and Future Termination (Policy Class) .......... 12

LEGAL STANDARD .......... 13

ARGUMENT .......... 13

- I. The Proposed Termination Class and Policy Class Meet the Requirements of Rule 23(a) .......... 13
  - A. Numerosity .......... 14
  - B. Commonality .......... 16
  - C. Typicality .......... 18
  - D. Adequacy .......... 21
- II. The Proposed Classes Meet the Requirements of Rule 23(b)(2). .......... 23

CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Cases** .......... **Page(s)**

*A.B. v. Haw. State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022) .......... 14, 15

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) .......... 13

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 21, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) .......... 13

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......... 16, 19

*C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
317 F.R.D. 91 (N.D. Cal. 2016) .......... 14

*Casa Libre/Freedom House v. Mayorkas*,
No. 2:22-cv-01510-ODW(JPRx), 2023 WL 3649589 (C.D. Cal. May 25,2023) .......... 23, 24

*Cruz v. MM*, 879, Inc.,
329 F.R.D. 639 (E.D. Cal. 2019) .......... 17

*Doe #1 v. Trump*,
335 F.R.D. 416 (D. Or. 2020) .......... 16

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) .......... 13

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......... 16

*Evon v. Law Offs. of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) .......... 21

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .......... 21

*Gilbert v. MoneyMutual, LLC*,
318 F.R.D. 614 (N.D. Cal. 2016) .......... 14

*Gonzalez v. U.S. Immigr. And Customs Enf't*,
975 F.3d 788 (9th Cir. 2020) .......... 16, 19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 18

*Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909 (9th Cir. 1964) .... 14

*Hernandez v. Lynch*, No. EDCV 16-00620-JGB (KKx), 2016 WL 7116611 (C.D. Cal Nov. 10, 2016) .... 16

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019) .... 15

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) .... 19

*Kidd v. Mayorkas*, 734 F. Supp. 3d 967 (C.D. Cal. May 15, 2024) .... 23

*Kincaid v. City of Fresno*, 244 F.R.D. 597 (E.D. Cal. 2007) .... 14

*Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238 (D.D.C. June 3, 2025) .... *passim*

*Maney v. Brown*, 516 F. Supp. 3d 1161 (D. Or. 2021) .... 13

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .... 18

*Ms. L v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 529 (S.D. Cal. 2018) .... 17

*Nat'l TPS All. v. Noem*, 830 F. Supp. 3d 939 (N.D. Cal. 2025) .... 24

*Nightingale v. USCIS*, 333 F.R.D. 449 (N.D. Cal. 2019) .... 22

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982) .... 15

*Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959 (D. Ariz. 2011) .... 24

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .... *passim*

*Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (Ex), 2016 WL 4238635 (C.D. Cal. Aug. 10, 2016) .... 14

*Refugee & Immigr. Ctr. for Educ. & Legal Servs. v. Noem*, No. CV 25-306 (RDM), 2025 WL 1825431 (D.D.C. July 2, 2025) .... 23

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2009)........................................................................................ 17, 24

*Saravia for A.H. v. Sessions*,
905 F.3d 1137 (9th Cir. 2018)........................................................................................ 15

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017)........................................................................ 15

*Scholl v. Mnuchin*,
494 F. Supp. 3d 661 (N.D. Cal. 2020).......................................................................... 23

*Sueoka v. United States*,
101 F. App’x 649 (9th Cir. 2004).................................................................................. 14

*Thakur v. Trump*,
787 F. Supp. 3d 955 (N.D. Cal. 2025)...................................................10, 13, 19, 23

*Villalpando v. Exel Direct Inc.*,
303 F.R.D. 588 (N.D. Cal. 2014) .................................................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...........................................................................................13, 16, 17, 23

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998)........................................................................................ 24

**Statutes** .......................................................................................................... **Page(s)**

5 U.S.C. § 705.............................................................................................................. 8, 13

**Rules** .......................................................................................................... **Page(s)**

Fed. R. Civ. P. 23(a).................................................................................................. *passim*

Fed. R. Civ. P. 23(b) ................................................................................................ *passim*

Fed. R. Civ. P. 23(c)..................................................................................................... 24

Fed. R. Civ. P. 23(g) ..............................................................................................7, 23, 25

**Other Authorities** .......................................................................................... **Page(s)**

Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025)............................................ 11

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Nov. 16, 2026 at 9:30 a.m., or as soon thereafter as this matter may be heard, Plaintiffs Arghavan Salles, Abigail Hatcher, Andrea Rosso, Ann D. Cohen-Wilson, Dolores Albarracín, Heidi Moseson, Jade Pagkas-Bather, Jonathan Kyle Daw, Katie Edwards, Kelton Minor, Michael D. Green, Sara Jackson, Suzanne Bell, Jordan Doe 1, Jordan Doe 2, Jordan Doe 3, and Jordan Doe 4 (collectively, "Plaintiffs") hereby move this Court for an Order provisionally certifying the proposed classes defined herein.

Plaintiffs request provisional certification under Federal Rules of Civil Procedure 23(a) and (b)(2) of two putative classes:

- **Termination Class**: All principal investigators, multiple-principal investigators, researchers, or project leaders for National Institutes of Health ("NIH") research grants identified for termination based on the Challenged Policies, whose grants remain terminated.

- **Policy Class:** All persons who have an existing NIH grant and/or who applied or will apply for an NIH grant whose grant or application is subject to termination, denial, rephrasing, or renegotiation based on the Challenged Policies; and all persons who would apply for an NIH grant but for the Challenged Policies.

Plaintiffs seek provisional certification for the purpose of obtaining the classwide preliminary relief sought in their Motion for Stay and Preliminary Injunction. Additionally, Plaintiffs ask the Court to provisionally appoint the American Civil Liberties Union Foundation, the American Civil Liberties Union Foundation of Northern California, Protect Democracy, the Center for Science in the Public Interest, and Jacobson Lawyers Group PLLC as class counsel under Rule 23(g).

The relief requested is based upon this Notice of Motion and Motion, the incorporated Memorandum of Law, the supporting Declarations and Proposed Order filed herewith, Plaintiffs' Motion for Stay and Preliminary Injunction and supporting Declarations (ECF 33–49), and the Declarations and accompanying exhibits submitted with the Doe Plaintiffs' Administrative Motion to Proceed Pseudonymously (ECF 7–10). This Motion is also based on all papers, evidence, and records on file in this action, including Plaintiffs' Class Action Complaint (ECF 1) and any other written or oral evidence or argument as may be requested or permitted by the Court.

## INTRODUCTION

This action challenges system-wide policies developed and implemented by Defendants NIH, Jay Bhattacharya, the Department of Health and Human Servies ("HHS"), Robert F. Kennedy, Jr., and the United States DOGE Services ("USDS") (collectively, "Defendants") to (1) leverage NIH's funding power to target and suppress the expression of disfavored views, compel speech, and terminate funding for speech it dislikes, all in violation of the First Amendment, and (2) contradict congressional mandates designed to prevent the politicization of the NIH grant award process, ignore regulations limiting the circumstances in which grant termination is allowed, and impose arbitrary and capricious grant-screening mechanisms without explanation or even public disclosure, all in violation of the Administrative Procedures Act ("APA").

These policies violate the rights of thousands of biomedical and behavioral researchers across the country, including Plaintiffs. To stop these continuing violations, Plaintiffs are seeking a stay and preliminary injunction on behalf of themselves and two classes of similarly situated researchers. Specifically, Plaintiffs and the putative classes ask that Defendants be preliminarily enjoined from applying the "Challenged Policies" as they are defined herein and in Plaintiffs' Motion for Stay and Preliminary Injunction, that the Challenged Policies be stayed under 5 U.S.C. § 705, and that the unconstitutionally terminated grants be reinstated. Mot. for Stay & Prelim. Inj., ECF 33 ("MPI") at 15.

Plaintiffs now ask this Court to certify two provisional classes for the purpose of issuing this preliminary relief. Provisional class certification is appropriate here because the Challenged Policies apply generally to each of the proposed classes and Plaintiffs' class claims and the defined classes meet all Federal Rule of Civil Procedure 23 requirements.

Specifically, Plaintiffs seek provisional certification of the following classes:

> **Termination Class**: All principal investigators, multiple-principal investigators, researchers, or project leaders for NIH research grants identified for termination based on the Challenged Policies, whose grants remain terminated.
>
> **Policy Class:** All persons who have an existing NIH grant and/or who applied or will apply for an NIH grant whose grant or application is subject to termination, denial, rephrasing, or renegotiation based on the Challenged Policies; and all persons who would apply for an NIH grant but for the Challenged Policies.

The proposed Classes (the Termination Class and Policy Class) meet the requirements of Federal Rules of Civil Procedure 23(a)(1)–(4) and 23(b)(2). *First*, the Classes are each sufficiently numerous that joinder would be impracticable. Even counting conservatively, the proposed Termination Class includes researchers on more than 1,000 NIH grant-funded projects that were terminated under the Challenged Policies. The Policy Class includes thousands of researchers who continue to work under or pursue NIH grants, and are therefore at risk of termination, denial, rephrasing, and/or renegotiation pursuant to the Challenged Policies. Many of those in the Termination Class are also in the Policy Class, as researchers often have both terminated and active grants and may also be pursuing applications for future funding.

*Second*, this case involves common, class-wide questions of fact and law. Members of the Termination Class share common facts because they were awarded NIH grants, and these grants were terminated by Defendants based on the Challenged Policies. The legal questions underpinning commonality of this class include whether the Challenged Policies discriminate based on viewpoint, and whether terminating class members' grants based on these Challenged Policies was a violation of the First Amendment, including because it constituted retaliation for protected speech. Similarly, the Policy Class members share common facts as each class member seeks to maintain a non-terminated NIH grant or pursue an application for a grant, but their projects and proposals are subject to potential termination, denial, rephrasing, and/or renegotiation pursuant to the Challenged Policies. The Policy Class raises the common questions of whether Defendants' Challenged Policies subject Policy Class members to termination, denial, rephrasing, or renegotiation based on perceived viewpoint; whether the Challenged Policies compel speech; whether this violates the First Amendment; as well as the common questions of whether Defendants' Challenged Policies are arbitrary and capricious and contrary to statutory and regulatory authority in violation of the APA.

*Third* and *Fourth*, the proposed class representatives for the Termination Class and Policy Class are proper because their claims are typical of unnamed class members, they have no conflicts with any unnamed class members, and they can adequately represent the Classes. The Termination Class is represented by Plaintiffs Salles, Rosso, Cohen, Daw, and Doe 2. As demonstrated below, each of these Plaintiffs had an active NIH grant that was terminated by Defendants pursuant to the Challenged

Policies and in retaliation for their protected speech. The Policy Class is represented by Plaintiffs Salles, Hatcher, Rosso, Cohen, Albarracín, Moseson, Pagkas-Bather, Daw, Edwards, Minor, Green, Jackson, Bell, and Does 1–4. Each of the proposed Policy Class representatives has a non-terminated NIH grant or an application for a grant that has been or could be flagged by the Challenged Policies for compelled rephrasing, renegotiation, or denial. Each Termination Class representative and each Policy Class representative shares similar injuries and seeks the same relief as the absent class members they represent.

*Finally*, Defendants have acted—and absent relief, will continue to act—on grounds that are generally applicable to the proposed Termination Class and Policy Class by carrying out policies that violate the proposed class members' rights under the United States Constitution and the APA.

Plaintiffs seek urgent preliminary relief on a classwide basis because Defendants will otherwise continue employing their Challenged Policies—injecting unlawful viewpoint discrimination, retaliation, and arbitrary and capricious requirements into a process built to fund and maintain our Nation's most compelling and important scientific work and the people who generate it. At least one court within this district has provisionally certified classes like the proposed Classes under similar circumstances involving the unlawful termination of federal grants. *See, e.g.*, *Thakur v. Trump*, 787 F. Supp. 3d 955, 1005 (N.D. Cal. 2025), *aff'd in part*, *rev'd in part and remanded*, 176 F.4th 1187 (9th Cir. 2026). Accordingly, and for the reasons further set forth below, Plaintiffs respectfully request that the Court provisionally certify the proposed Classes under Rules 23(a) and (b)(2).

## BACKGROUND

### I. Defendants' Challenged Policies Replace Scientific Merit Review with Viewpoint-Based Screening.

As set forth in detail in Plaintiffs' Complaint and Motion for Stay and Preliminary Injunction, Defendants have enacted policies that prohibit the award of new or continuing scientific research funding to projects that Defendants suspect will lead to speech that communicates certain disfavored viewpoints. MPI at 9–14. The crux of these policies, the "Challenged Policies," is simple: starting in January 2025, Defendants have systematically terminated and renegotiated NIH grants and denied research proposals in an effort to silence certain disfavored views. These polices label research that

Defendants believe is based on, motivated by, or likely to communicate disfavored views about diversity, equity, and inclusion ("DEI"); gender identity; climate change; misinformation; and vaccine hesitancy as low-value, unscientific, or otherwise unsuitable for NIH funding. Decl. of Oscar Heanue, ECF 49 ("Heanue") ¶ 8, Ex. 4 at 2; *id.* ¶ 15, Ex. 11; *id.* ¶ 16, Ex. 12; *id.* ¶ 17, Ex. 13; *id.* ¶ 18, Ex. 14; *id.* ¶ 19, Ex. 15 at 4; *id.* ¶ 20, Ex. 16 at 5. They also impose an extra-statutory level of final review for both new and continuing awards, and forbid deference to non-politically appointed scientists in that review. Exec. Order No. 14332, §§ 3(a), 4(b)(ii)(A), (B), (D), 90 Fed. Reg. 38929 (Aug. 7, 2025); Decl. of Doe 1, ECF 7 ("Doe 1") ¶ 13, Ex. 3 at 3, 5.

The so-called "alignment process" used to implement the policies begins with a computational text-analysis tool that flags grants and applications that use any of 235 forbidden terms which Defendants associate with the disfavored viewpoints. Doe 1 ¶ 13, Ex. 2 at 12−16. Projects flagged by this algorithm are subject to extra review by NIH staff. Heanue ¶ 22, Ex. 18 at 2, 5. Staff are directed to either terminate a grant or deny an application outright; or to compel researchers to remove flagged language and concepts and instead adopt the language that Defendants prefer upon threat of termination or denial. *Id.* at 3, 5; *see also* Heanue ¶ 21, Ex. 17; Decl. of Doe 3, ECF 9 ("Doe 3"), ¶¶ 16−27; Decl. of Doe 4, ECF 10 ("Doe 4") ¶¶ 10, 12, 15, 17−19.

## II. Defendants' Challenged Policies Harm Researchers Whose NIH Grants Were Terminated (Termination Class).

As of September 2026, more than one thousand NIH grants have been (and remain) terminated under the Challenged Policies. Decl. of Grayce Zelphin ("Zelphin") ¶ 13, Ex. 1. Research grants previously held by Plaintiffs Salles, Rosso, Cohen, Daw, and Doe 2 are among them. Decl. of Salles, ECF 34 ("Salles") ¶ 11; Decl. of Rosso, ECF 36 ("Rosso") ¶ 25; Decl. of Cohen-Wilson, ECF 37 ("Cohen") ¶ 21; Decl. of Daw, ECF 41 ("Daw") ¶ 15; Decl. of Doe 2, ECF 8 ("Doe 2") ¶ 23. Like all others with grants terminated under the Challenged Policies, these Plaintiffs are researchers who submitted applications that were selected for funding through NIH's extremely rigorous two-step, peer-review-driven process. Salles ¶ 6; Rosso ¶¶ 10−11; Cohen ¶¶ 11−12; Daw ¶¶ 8, 10−11; Doe 2 ¶¶ 11−13. Their research covers diverse topics, ranging from Alzheimer's disease and other diseases related to aging (Cohen ¶ 10; Rosso ¶¶ 11−12, 14−15; Doe 2 ¶¶ 4, 27, 37), to kidney disease (Daw ¶ 18), to sexual

harassment in the biomedical research field (Salles ¶¶ 6–8). However, their grants share a common thread—Defendants determined that each of the Plaintiffs' grants were likely to result in speech communicating views that are now prohibited (Cohen ¶ 22; Salles ¶ 15; Rosso ¶¶ 25–26; Daw ¶¶ 16–17; Doe 2 ¶ 23). Thus, under the Challenged Policies, they were terminated based on the protected views of researchers; the views that Defendants expected the project results, publications, or presentations to express; and/or the speech that in fact resulted from the funding. *See, e.g.*, Cohen ¶ 22; Salles ¶¶ 14–15; Doe 2 ¶ 23; Daw ¶¶ 16–18. The terminations are causing irreparable harm, in the form of silenced or delayed speech, professional repercussions, and more, including to Plaintiffs Salles, Cohen, Rosso, Daw, and Doe 2. *See* Cohen ¶¶ 24–28; Salles ¶ 16; Rosso ¶¶ 32–36; Daw ¶¶ 19–22; Doe 2 ¶ 28.

### III. Defendants' Challenged Policies Harm Researchers Whose Grants or Applications are Subject to Denial, Rephrasing, Renegotiation, and Future Termination (Policy Class).

Under the Challenged Policies, Defendants continue to screen grants and applications to ferret out the disfavored viewpoints. Heanue, Ex. 15 at 7; *id*. Ex. 16; *id*. Ex. 17; *id*. Ex. 18. Once Defendants identify any aspect of a project as likely to result in speech communicating a disfavored viewpoint, the Challenged Policies require it to be renegotiated, denied, or terminated. *Id*. Ex. 18 at 2, 3, 5. Like thousands of other researchers, Plaintiffs Salles, Hatcher, Rosso, Cohen, Albarracín, Moseson, Pagkas-Bather, Daw, Edwards, Minor, Green, Jackson, Bell, and Does 1–4 have grants or applications that have been or will be screened under the Challenged Policies for their potential to result in disfavored speech. Salles ¶ 11; Decl. of Hatcher, ECF 35 ("Hatcher") ¶ 9; Rosso ¶¶ 22–26; Cohen ¶ 16; Decl. of Albarracín, ECF 38 ("Albarracín") ¶¶ 14–15, 22; Decl. of Moseson, ECF 39 ("Moseson") ¶¶ 23, 30-34; Decl. of Pagkas-Bather, ECF 40 ("Pagkas-Bather") ¶¶ 12, 15, 21; Daw ¶ 14; Decl. of Edwards, ECF 42 ("Edwards") ¶ 14; Decl. of Minor, ECF 43 ("Minor") ¶¶ 19-25; Decl. of Green, ECF 44 ("Green") ¶¶ 12–13, 16–17; Decl. of Jackson, ECF 45 ("Jackson") ¶ 21; Decl. of Bell, ECF 46 ("Bell") ¶¶ 17, 19; Doe 1 ¶¶ 12–14, 17–18; Doe 2 ¶ 23; Doe 3 ¶¶ 16, 18–27; Doe 4 ¶¶ 10, 12, 15, 17–19. And, because their research-related speech is perceived to contain viewpoints now prohibited by the Challenged Policies, Plaintiffs' NIH grants or applications are (or would be) subject to renegotiation, compelled revision, denial, or termination. Pagkas-Bather ¶¶ 15–19, 21; Bell ¶¶ 10, 13, 17, 21 27–28, 31, 33; Albarracín ¶ 26; Moseson ¶¶ 34–40; Edwards ¶¶ 14–18; Doe 1 ¶¶ 17–18; Doe 3 ¶ 30; Doe 4 ¶¶ 14–15.

## LEGAL STANDARD

Courts in the Ninth Circuit routinely grant provisional class certification to plaintiffs seeking interim relief. *See, e.g.*, *Thakur*, 787 F. Supp. 3d at 999 (provisionally certifying class of university researchers asserting APA and First Amendment claims); *Doe #1 v. Trump*, 957 F.3d 1050, 1069 (9th Cir. 2020) (denying motion to stay district court's grant of nationwide preliminary injunction on behalf of a provisionally certified class); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n. 4 (9th Cir. 2020) (noting Ninth Circuit has "approved provisional class certification for purposes of preliminary injunction proceedings"); *Maney v. Brown*, 516 F. Supp. 3d 1161, 1171 (D. Or. 2021); *see also Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *3 (D.D.C. June 3, 2025) (certifying class in action seeking to stay policy under APA Section 705). Here, Plaintiffs seek preliminary relief in the form of an injunction and a Section 705 stay to halt enforcement of the Challenged Policies and seek reinstatement of the terminated grants. *See* MPI at 31.

Plaintiffs seeking provisional class certification must satisfy the requirements of Federal Rule of Civil Procedure 23. *See Thakur*, 787 F. Supp. 3d at 997. Under Rule 23, the moving party must meet each of the four requirements of Rule 23(a)—(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation—and also satisfy at least one subsection of Rule 23(b). "In resolving a dispute about whether class certification is proper, the district court may consider material beyond the pleadings . . . ." *Maney*, 516 F. Supp. 3d at 1172 (internal quotations omitted).

Although the Court's analysis under Rule 23 "may entail some overlap with the merits of the plaintiff's underlying claim," courts cannot "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted))

## ARGUMENT

### I. The Proposed Termination Class and Policy Class Meet the Requirements of Rule 23(a).

Rule 23(a) requires plaintiffs to show that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Here, the proposed Classes satisfy each of these requirements.

**A. Numerosity**

A class may be provisionally certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The standard is not "whether joinder is a literal impossibility." *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022) (internal quotations and citations omitted). "Rather, the question is whether joinder of all class members is *practicable*—i.e., *reasonably* capable of being accomplished." *Id.* Courts, in turn, define impracticability as "only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964).

The specific number of members in a class is not dispositive. Indeed, courts "routinely" deem joinder impracticable where a class comprises 40 or more members, *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–06 (N.D. Cal. 2014) but have also deemed it "impracticable in cases involving as few as 25 class members," *Gilbert v. MoneyMutual, LLC*, 318 F.R.D. 614, 621 (N.D. Cal. 2016). Plaintiffs need only "show some evidence of or reasonably estimate the number of class members." *Kincaid v. City of Fresno*, 244 F.R.D. 597, 601 (E.D. Cal. 2007) (internal quotations omitted).

Where, as here, only equitable relief is sought, "the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members" makes joinder impracticable. *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017) (alterations in original) (internal quotations omitted) (citing *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004)); *see also Kingdom*, 2025 WL 1568238, at *13 (finding numerosity satisfied on a motion for provisional class certification where plaintiffs sought relief in the form of a stay pursuant to § 705, noting the "impracticality" of counting unknown future class members). This relaxed requirement recognizes that avoiding duplicative suits brought by other class members promotes judicial economy. *Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (Ex), 2016 WL 4238635, at *5 (C.D. Cal. Aug. 10, 2016).

Here, the numerosity requirement is easily met for both the Termination and the Policy Classes. Currently, more than 1,000 NIH grant-funded projects remain terminated due to NIH's mass viewpoint-

driven termination of research grants under the Challenged Policies. Zelphin ¶ 13, Ex. 1. Each terminated NIH grant impacts the principal investigator, as well as any other researchers supported by the award—all of whom are putative Termination Class members. Doe 2 ¶¶ 25–29; Jackson ¶¶ 27, 30; Decl. of Doe 5, ECF 47 ("Doe 5") ¶¶ 21, 24). Accordingly, there are thousands of putative Termination Class members.

The Policy Class is even larger. NIH provides between 50,000 and 60,000 grants a year to more than 300,000 researchers at more than 2,500 universities, medical schools, and other research institutions in every state. Heanue ¶ 7, Ex. 3 at 2. The number of individuals who apply for grants is far greater. While it is impossible to know precisely how many of these thousands of researchers are currently being impacted by the Challenged Policies, over fiscal years 2025 and 2026, disfavored words—such as "Equity," "Disparities," "Racial," and "Gender"—were removed from more than a thousand different existing grant titles according to data collected from NIH Reporter. Zelphin ¶ 14, Ex. 2. This comports with Plaintiffs' experiences. *See* Doe 3 ¶¶ 16–18; Doe 4 ¶¶ 16–17; Rosso ¶ 20. Researchers who were compelled to alter or remove language in other grant materials, as well as those who have resisted (and will likely be denied or have grants terminated as a result), are also included in the Policy Class. *See, e.g.*, Bell ¶¶ 17, 19, 28 (altered language); Moseson ¶¶ 23–24, 31, 36 (same); Green ¶¶ 10–13, 15–17 (same); Albarracín ¶¶ 15–17 (same); Edwards ¶¶ 16–17 (same); Pagkas-Bather ¶¶ 11–12 (same); Minor ¶¶ 22–25 (same); Cohen ¶¶ 16–20 (same); Hatcher ¶ 12 (same); Jackson ¶¶ 21–26 (resisted). Taken together, the evidence suggests that the membership of the Policy Class numbers in the thousands.

Moreover, this estimate does not include future members who will be subjected to the Challenged Policies. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). When a "class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable." *A.B.*, 30 F.4th at 838; *see also J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (observing "classes including future claimants generally meet the numerosity requirement due to the impracticality of counting such members, much less joining them" (internal quotations omitted)); *cf. Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("Where the exact size of the class

is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

Accordingly, the proposed Classes meet the numerosity requirement of Rule 23(a)(1).

**B. Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs' claims "must depend upon a common contention." *Wal-Mart Stores*, 564 U.S. at 350. A contention is common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. "Even a single common question" will satisfy Rule 23(a)(2). *Wal-Mart Stores*, 564 U.S. at 359 (cleaned up); *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (construing Rule 23(a)(2) requirements "permissively"). Moreover, "[a]ll questions of fact and law need not be common to satisfy the commonality requirement. The existence of shared legal issues with divergent factual predicates is sufficient." *Gonzalez v. U.S. Immigr. And Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (internal quotations and alterations omitted). "Thus, where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotations omitted).

In the Ninth Circuit, commonality is satisfied where, as here, Plaintiffs "challenge[] a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *accord Gonzalez*, 975 F.3d at 808; *see also Kingdom*, 2025 WL 1568238, at *14 (commonality satisfied on motion for provisional certification for purposes of § 705 relief where plaintiffs challenged a "blanket policy" affecting class members); 7A Wright, Miller & Kane, Fed. Practice & Proc. § 1763, at 226 (4th ed. 2025) ("[C]lass suits for injunctive or declaratory relief by their very nature often present common questions satisfying Rule 23(a)(2).").[1] Both the Termination Class

[1] *See, e.g.*, *Gonzalez*, 975 F.3d at 807–09 (affirming finding that commonality requirement was met where plaintiffs alleged the government had an unlawful policy and practice of basing probable cause determinations on "only a check of an online database"); *Hernandez v. Lynch*, No. EDCV 16-00620-JGB (KKx), 2016 WL 7116611, at *17 (C.D. Cal Nov. 10, 2016) (finding commonality among class of detained immigrants challenging the same bond determination policies and practices); *Doe #1 v. Trump*, 335 F.R.D. 416, 433–34 (D. Or. 2020) (finding commonality requirement satisfied "in cases involving

and Policy Class satisfy the commonality requirement because both classes are challenging the legality of system-wide policies which have resulted in either class members' grant terminations (Termination Class) and/or class members being subject to forced renegotiation, rephrasing, and/or denial, or causing them to withhold applications for NIH funding as futile under the policies (Policy Class).

For the Termination Class, each putative class member was subject to, and terminated pursuant to, the same Challenged Policies. Accordingly, the Termination Class members share a "common core" of facts—that they were terminated and why. *Parsons*, 754 F.3d at 675. The "determination as to the legality of those common policies," i.e. determining whether these terminations were based on unlawful viewpoint discrimination and made in retaliation for protected speech in violation of the First Amendment, "will resolve class-wide claims 'in one stroke.'" *Cruz v. MM*, 879, Inc., 329 F.R.D. 639, 646 (E.D. Cal. 2019) (quoting *Wal-Mart Stores*, 564 U.S. at 350). The Termination Class tees up multiple common questions of law and fact, such as:

- Whether Defendants' termination of class members' NIH grants was based on viewpoint;
- Whether viewpoint-based termination of class members' NIH grants violates the First Amendment;
- Whether Defendants terminated class members' NIH grants based on class members' refusal or inability to comply with unconstitutional compelled speech conditions; and
- Whether Defendants' termination of class members' NIH grants was retaliatory under the First Amendment.

Because the Termination Class's claims are "capable of classwide resolution" and the determination of these common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke," the Termination Class meets the commonality requirement. *Wal-Mart Stores*, 564 U.S. at 350.

---

challenges to systemic immigration policies and procedures, even though immigration decisions ultimately involve discretionary decisions by consular officers"); *Ms. L v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 529, 539 (S.D. Cal. 2018) (finding commonality requirement satisfied where plaintiffs challenged government's "practice of separating migrant parents and children and keeping them separate without a showing the parent is unfit"); *Rodriguez v. Hayes*, 591 F.3d 1105, 1122–23 (finding commonality despite individualized differences because of common questions concerning constitutionality of prolonged immigration detention).

The Policy Class similarly satisfies the commonality requirement. As defined, the Policy Class includes those researchers whose NIH grants or applications have been, or would be, subject to termination, denial, rephrasing, or renegotiation based on Defendants' Challenged Policies. While there is variation in the precise outcome suffered by each class member and the status of each class members' pursuit of NIH funding, common contentions of law and fact will drive the resolution of their claims. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). For the proposed Policy Class, these common questions of law and fact include:

- Whether the Challenged Policies penalize certain disfavored viewpoints in government-facilitated private speech, and whether that is a violation of the First Amendment;
- Whether the Challenged Polices impose compelled speech conditions on funding in violation of the First Amendment;
- Whether the Challenged Policies are final agency actions;
- Whether the Challenged Policies are arbitrary and capricious in violation of the APA;
- Whether the Challenged Policies usurp each Institute and Center Director's statutory authority to make the final decision on grant applications, and that is contrary to law under the APA; and
- Whether the Challenged Policies require existing awards be terminated for misalignment with agency priorities that were adopted after the awards were made, and whether this is contrary to law under the APA.

Central to each of these inquiries are Defendants' system-wide policies, that similarly impact all Policy Class members. Accordingly, the proposed Classes satisfy the commonality requirement of Rule 23(a)(2).

**C. Typicality**

Rule 23(a)(3) requires that the claims "of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The inquiry "focuses on the nature of the claim" that the proposed class representative brings, and not "the specific facts from

which it arose." *Gonzalez*, 975 F.3d at 809 (internal quotation marks omitted); *see also Armstrong*, 275 F.3d at 868 (typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (internal quotations omitted).

Like commonality, the typicality requirement "is permissive and requires nothing more than that a class plaintiff's claims be reasonably coextensive with those of absent class members." *Gonzalez*, 975 F.3d at 809 (internal quotations omitted). Typicality "is not primarily concerned with whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Here, Plaintiffs' claims are typical of proposed class members' claims because they all arise from, and challenge the legality of, Defendants' Challenged Policies. The same course of events—specifically, Defendants' adoption and application of the Challenged Policies (for the Policy Class), and Defendants' terminations under the Challenged Policies (for the Termination Class)—are what have caused class members' injuries. For each class, the proposed representatives of that class suffered similar injuries and request the same relief as absent class members.

### 1. Termination Class

For the Termination Class, each proposed class representative is a researcher listed on an NIH grant that was terminated based on the Challenged Policies. *See* Salles ¶¶ 11−15, Exs. 2 & 3; Rosso ¶¶ 25−30, Exs. 3 & 4; Cohen ¶ 21, Ex.3; Daw ¶¶ 15−17, Exs. 3 & 4; Doe 2 ¶¶ 23−24, Ex. 2. The putative Termination Class's claims arise from shared facts, such as (1) class members are researchers on NIH-funded grants; (2) that were terminated; (3) because Defendants determined that the grants ran afoul of the Challenged Policies, i.e., the grants did not align with NIH/HHS priorities and would result in the communication of views that Defendants disfavor. Accordingly, because the proposed class representatives share these facts with absent class members, and these shared facts underlie each of the class claims, the typicality requirement is met. *See, e.g.*, *Armstrong*, 275 F.3d at 868−69; *see also Thakur*, 787 F. Supp. 3d at 1001−02 (finding typicality where plaintiffs' grants were flagged by a keyword search and terminated pursuant to the same government policies).

**2. Policy Class**

Similarly, the Policy Class representatives bring claims typical of those of the putative class they represent. Each Plaintiff-representative's claims are coextensive with the claims of absent class members because all claims stem directly from the Defendants' adoption and enforcement of the Challenged Policies. Plaintiffs, like all putative class members, engage in NIH-funded research and would like to pursue future NIH-funded research. *See* Salles ¶¶ 6, 18; Hatcher ¶¶ 6, 28−30; Rosso ¶¶ 8, 38; Cohen ¶¶ 7, 29−30; Albarracín ¶¶ 8, 27; Moseson ¶¶ 12, 14−15, 42; Pagkas-Bather ¶¶ 8, 16, 21−22; Daw ¶ 8; Edwards ¶¶ 8, 24; Minor ¶¶ 6−7, 29; Green ¶¶ 8−10, 20; Jackson ¶¶ 7, 28, 31−32; Bell ¶¶ 8, 22, 30−33; Doe 1 ¶¶ 6, 20; Doe 2 ¶¶ 8, 30; Doe 3 ¶¶ 11−12; Doe 4 ¶¶ 8, 29. And, their research is and will continue to be negatively impacted by the Challenged Policies because their projects include words or are perceived to communicate viewpoints prohibited by the Challenged Policies—including disfavored viewpoints regarding "DEI" (Salles ¶ 7; Hatcher ¶ 7; Rosso ¶ 9; Cohen ¶ 8; Pagkas-Bather ¶¶ 9, 11, 16, 21−22; Daw ¶ 9; Green ¶¶ 9, 12; Jackson ¶¶ 12, 21; Doe 1 ¶ 7; Doe 2 ¶ 17; Doe 4 ¶5), gender identity (Moseson ¶¶ 5, 24; Edwards ¶¶ 11−12; Doe 3 ¶ 4), climate change (Minor ¶ 3; Bell ¶ 31), vaccine hesitancy (Albarracín ¶ 25), misinformation (Albarracín ¶ 25), and abortion (Bell ¶¶ 16−17, 19; Moseson ¶¶ 5, 18, 23−24, 36; Doe 1 ¶ 17). *See also* MPI at 13−16.

The Policy Class's First Amendment Claims are based on allegations that the Challenged Policies unlawfully (1) screen grants and applications for projects that Defendants believe will result in speech communicating disfavored viewpoints; and (2) penalize the researchers of these screened applications and grants (including by compelling adoption of the government's preferred viewpoints in research-related speech). Plaintiffs have all had their research screened for potential to communicate disfavored views under the Challenged Policies. *See* Salles ¶¶ 14−15; Hatcher ¶ 12; Rosso ¶¶ 22−25; Cohen ¶ 16; Albarracín ¶¶ 14−15, 22, 26; Moseson ¶¶ 23−24, 29−36; Pagkas-Bather ¶¶ 12, 15, 17−18; Daw ¶¶ 15−17; Edwards ¶¶ 14−15; Minor ¶¶ 19−21; Green ¶¶ 12, 16; Jackson ¶ 21; Bell ¶ 17; Doe 1 ¶ 12; Doe 2 ¶¶ 22−23; Doe 3 ¶¶ 16, 25; Doe 4 ¶ 17. And all Plaintiffs continue to be penalized under the Challenged Policies. *See* Salles ¶¶ 18−20, 22; Hatcher ¶ 12−24, 26, 28−30; Rosso ¶ 36; Cohen ¶¶ 27, 30; Albarracín ¶¶ 19, 24−27, 19, 22, 24−29; Moseson ¶¶ 23−24, 28−42; Pagkas-Bather ¶¶ 12, 15−22; Daw ¶ 22; Edwards ¶¶ 15−24; Minor ¶¶ 19−29; Green ¶¶ 12−21; Jackson ¶¶ 21−32; Bell ¶¶ 17−21, 27–33;

Doe 1 ¶¶ 9–10, 12–14, 16–23; Doe 2 ¶¶ 30–37; Doe 3 ¶¶ 16–22, 25–34, 36–37; Doe 4 ¶¶ 11–13, 15, 17–28. Accordingly, Plaintiff-representatives' claims are typical of similarly situated researchers who are, or will be, impacted by the Challenged Policies and who all share the same bases for a First Amendment challenge.

The Policy Class's APA claims are also rooted in the legality of the Challenged Policies and are shared between Plaintiff-representatives and the putative class. Plaintiff-representatives claim Defendants violated the APA because the Challenged Policies are contrary to law and are arbitrary and capricious. MPI at 24. Plaintiffs' APA claims hinge on the statutory authority and reasoning underlying the Challenged Policies, and the legality of their requirements. Because the *policies* challenged in this suit are "not unique" to the individual Plaintiffs—indeed the analysis is identical regardless of any variance in the Plaintiffs' circumstances—the Policy Class representatives' claims are typical. *Parsons*, 754 F.3d at 685. All members of the proposed Policy Class that Plaintiffs seek to represent are being "injured by the same course of conduct." *Id.*; *see also Kingdom*, 2025 WL 1568238, at *14 (finding proposed class met typicality requirement where all putative class members faced injury under the same blanket policy).

Accordingly, the proposed Classes satisfy the typicality requirement of Rule 23(a)(3).

**D. Adequacy**

Under Rule 23(a)(4), the Court must be satisfied that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor is assessed by answering two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (internal quotations and alterations omitted). This requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (alteration in original); *see Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (explaining that commonality and typicality "serve as guideposts" to ensure "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

The individual Plaintiffs seeking to represent the proposed Termination and Policy Classes satisfy both aspects of adequacy.

*First*, there is no conflict between the individual Plaintiffs and the proposed class members. All members of each class suffer the same injury, and all seek the same relief. *See Nightingale v. USCIS*, 333 F.R.D. 449, 462 (N.D. Cal. 2019) (finding plaintiffs to be adequate representatives where they had a "shared interest" or "mutual goal" with proposed class members to ensure lawful FOIA response practices); *Kingdom*, 2025 WL 1568238, at *14 (finding plaintiffs satisfied the adequacy requirement where they all faced the same "legal injury" as the putative class members). For the Termination Class, proposed class representatives, like absent class members, seek reinstatement of their terminated grants. For the Policy Class, proposed class representatives, like absent class members, seek to enjoin the Challenged Policies. Neither Class nor any of the putative class representatives seek, nor could they seek, guaranteed funding or a competitive advantage in the NIH extramural grant process that would potentially generate a conflict. Instead, proposed class representatives, like the putative classes they represent, seek only to vindicate their legal injuries and achieve the mutual goal of ensuring lawful NIH grant and application review processes.

*Second*, the proposed class representatives understand that they are bringing their claims on behalf of the putative classes and will vigorously prosecute this action on behalf of all class members and subclass members. *See* Salles ¶ 23; Hatcher ¶ 31; Rosso ¶ 40; Cohen ¶ 31; Albarracín ¶ 30; Moseson ¶ 43; Pagkas-Bather ¶ 23; Daw ¶ 24; Edwards ¶ 25; Minor ¶ 30; Green ¶ 22; Jackson ¶ 33; Bell ¶ 34; Doe 1 ¶ 28; Doe 2 ¶ 42; Doe 3 ¶ 38; Doe 4 ¶ 30. Plaintiffs seek preliminary relief on behalf of both proposed Classes as a whole, they share a common interest in ensuring the protection of their legal rights, and they have no interest that is actually or potentially antagonistic to other putative members of the proposed Class they represent. Accordingly, Plaintiffs meet the adequacy requirement of Rule 23(a)(4).

***Proposed class counsel.*** Counsel representing the Plaintiffs are experienced civil rights attorneys and practitioners in federal constitutional litigation, administrative law, class actions, and complex litigation. *See* Zelphin ¶ 1−11; Decl. of Rachel Meeropol; Decl. of Shalini Agarwal; Decl. of Lisa Mankofsky; Decl. of Daniel Jacobson. Plaintiffs' counsel have adequately and thoroughly investigated

the claims prior to bringing this suit, and they will vigorously prosecute this action on behalf of the proposed Classes. Zelphin ¶ 11; Meeropol ¶ 11; Agarwal ¶ 8; Mankofsky ¶ 9; Jacobson ¶ 17−19. For these reasons, proposed class counsel also meet the requirements of Rules 23(a)(4) and 23(g).

In sum, the proposed Classes satisfy each requirement of Rule 23(a).

**II. The proposed Classes meet the requirements of Rule 23(b)(2).**

In addition to satisfying the requirements of Rule 23(a), the proposed Classes should be provisionally certified because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The "primary role" of Rule 23(b)(2) has "always been the certification of civil rights actions." *Parsons*, 754 F.3d at 686 (citing *Amchem Products, Inc.*, 521 U.S. at 614). "The key to [a] (b)(2) class is 'the indivisible nature of the . . . declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores*, 564 U.S. at 360 (citation omitted). This standard is "unquestionably satisfied when members of a putative class seek uniform . . . declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688. Similarly, courts routinely certify or provisionally certify Rule 23(b)(2) classes seeking vacatur relief under the APA. *See, e.g.*, *Thakur*, 787 F. Supp. 3d at 1004−05 (granting provisional certification of a Rule 23(b)(2) class and vacating a federal action); *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 691 (N.D. Cal. 2020) (certifying a Rule 23(b)(2) class and vacating a federal action); *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 976, 987 (C.D. Cal. May 15, 2024) (same, granting provisional certification); *Casa Libre/Freedom House v. Mayorkas*, No. 2:22-cv-01510-ODW (JPRx), 2023 WL 3649589, at *14−15 (C.D. Cal. May 25, 2023) (certifying Rule 23(b)(2) class seeking only APA vacatur relief); *Refugee & Immigr. Ctr. for Educ. & Legal Servs. v. Noem*, No. CV 25-306 (RDM), 2025 WL 1825431, at *49, 51 (D.D.C. July 2, 2025) (certifying Rule 23(b)(2) class, vacating federal guidance, and entering declaratory judgment). Rule 23(b)(2) does not require the Court to examine "the viability or bases of the class members' claims for relief" nor find "that all members of the class have suffered identical injuries." *Parsons*, 754 F.3d at 688.

"It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The proposed Classes are prototypical Rule 23(b)(2) classes. *First*, Defendants have acted on grounds generally applicable to the proposed Classes because they have subjected all members of the proposed Classes to the same unlawful Challenged Policies. Courts have regularly certified Rule 23(b)(2) classes where, as here, plaintiffs challenge uniform policies and practices generally applicable to the class. *See, e.g.*, *Walters*, 145 F.3d at 1047 (affirming certification of Rule 23(b)(2) class where plaintiffs sought equitable relief against INS practices in document fraud proceedings); *Rodriguez*, 591 F.3d at 1125–26 (same); *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 990–91 (D. Ariz. 2011) (same).

*Second*, the prospective relief that Plaintiffs request for the proposed Classes is appropriate for the Classes as a whole because the requested relief addresses Defendants' failure to comply with the Constitution and federal law on a systemic level. Plaintiffs request an injunction to prevent Defendants from continuing to implement their unlawful policies pending judicial review. Because this remedy will provide preliminary relief to all members of the proposed Classes, provisional certification under Rule 23(b)(2) is appropriate. *See Parsons*, 754 F.3d at 689 (finding Rule 23(b)(2) requirements met where "every [person] in the proposed class is allegedly suffering from the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in [the agency's] policy and practice"). Furthermore, the Policy Class also seeks vacatur relief and a stay under the APA, and "courts have routinely certified Rule 23(b)(2) classes seeking vacatur relief under the APA." *Nat'l TPS All. v. Noem*, 830 F. Supp. 3d 939, 964 (N.D. Cal. 2025).

Whether Plaintiffs are entitled to the requested relief is not the proper inquiry to determine provisional certification. "All the Court does at this time is observe that the lawfulness or unlawfulness of the [challenged actions] is capable of systemwide treatment by way of a declaration . . . ." *Casa Libre/Freedom House*, 2023 WL 3649589, at *10 (certifying Rule 23(b)(2) class in a challenge to the way DHS processed Special Immigrant Juvenile petitions); *see also* Fed. R. Civ. P. 23(c)(1) advisory committee's note to 2003 amendment ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision[.]").

Accordingly, Plaintiffs respectfully request that the Court provisionally certify the proposed Classes under Rule 23(b)(2).

**CONCLUSION**

For the foregoing reasons, the Court should provisionally certify the proposed Termination Class and the proposed Policy Class under Federal Rules of Civil Procedure 23(a) and 23(b)(2). Additionally, Plaintiffs request that the Court provisionally appoint the American Civil Liberties Union Foundation, American Civil Liberties Union of Northern California, Protect Democracy, the Center for Science in the Public Interest, and Jacobson Lawyers Group PLLC class counsel pursuant to Rule 23(g).

Dated: September 25, 2026

Respectfully submitted,



**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**
GRAYCE ZELPHIN (CA Bar No. 279112)
gzelphin@aclunc.org
NEIL K. SAWHNEY (CA Bar No. 300130)
nsawhney@aclunc.org
CHESSIE THACHER (CA Bar No. 296767)
cthacher@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Attorneys for Plaintiffs*