BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
JORDAN A. HULSEBERG (D.C. Bar No. 90033542)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-3856
Email: jordan.a.hulseberg2@usdoj.gov

*Attorneys for United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARGHAVAN SALLES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH, *et al.*,<br><br>Defendants. | Case No. 26-cv-10510<br><br>DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION<br><br>Judge: Hon. Vince Chhabria<br>Location: Courtroom 03, 17th Floor<br>Date: Nov. 18, 2026 Time: 2:00 p.m. |

## TABLE OF CONTENTS

INTRODUCTION ........ 1
STATEMENT OF THE ISSUES TO BE DECIDED ........ 1
BACKGROUND ........ 2
ARGUMENT ........ 4
I. CLASS CERTIFICATION SHOULD BE DENIED ........ 6
A. Plaintiffs and Class Members Lack Standing ........ 6
B. Plaintiffs' Class Action Fails to Serve the Purposes of the Class Action ........ 8
C. Plaintiffs' Class Definition is Improper ........ 9
D. Plaintiffs Lack Commonality and Typicality ........ 10
E. Plaintiffs Cannot Invoke Rule 23(b)(2) Because Class-Wide Relief is Unavailable ........ 13
CONCLUSION ........ 14

# TABLE OF AUTHORITIES

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) ........ 10

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ........ 6

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ........ 8

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ........ 4, 9

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ........ 4, 12

*Castaneda v. Burger King Corp.*,
264 F.R.D. 557 (N.D. Cal. 2009) ........ 13

*Clapper v. Amnesty Intern. USA*,
568 U.S. 398 (2013) ........ 7

*Day v. GEICO Cas. Co.*,
No. 21-CV-02103-BLF, 2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) ........ 9, 10

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006) ........ 6

*Edwards v. Aurora Loan Servs.*,
791 F. Supp. 2d 144 (D.D.C. 2011) ........ 6

*Edwards v. First Am. Corp.*,
798 F.3d 1172 (9th Cir. 2015) ........ 5

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........ 4, 5

*Faculty Senate of Fla. Int'l Univ. v. Winn*,
477 F. Supp. 2d 1198 (S.D. Fla. 2007) ........ 6

*General Telephone Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) ........ 4

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........ 11

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*,
747 F.3d 44 (2d Cir. 2014) .......... 6

*Holmes v. Cont'l Can Co.*,
706 F.2d 1144 (11th Cir. 1983) .......... 13

*J.B. ex rel. Hart v. Valdez*,
186 F.3d 1280 (10th Cir. 1999) .......... 13

*J.L. v. Cissna*,
No. 18-CV-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) .......... 10

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999) .......... 7

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) .......... 7

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) .......... 6

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*,
216 F.3d 577 (7th Cir. 2000) .......... 13

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) .......... 7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 7

*Maher v. United States*,
314 F.3d 600 (Fed. Cir. 2002) .......... 6

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 7, 8

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .......... 10

*Padilla v. ICE*,
354 F. Supp. 3d 1218 (W.D. Wash. 2018) .......... 12

*Palantir USG, Inc. v. United States*,
129 Fed. Cl. 218 (Fed. Cl. 2016) .......... 12

*Probe v. State Teachers' Ret. Sys.*,
780 F.2d 776 (9th Cir. 1986) .......... 9

*Rutledge v. Elec. Hose & Rubber Co.*,
511 F.2d 668 (9th Cir. 1975) .......... 5

*Sampson v. Murray*,
415 U.S. 61 (1974) .......... 6

*Sardarian v. Fed. Emergency Mgmt. Agency*,
No. 3:19-CV-00910 (OAW), 2022 WL 4080325 (D. Conn. Apr. 1, 2022) .......... 7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .......... 8

*Simon v. E. Kentucky Welfare Rts. Org.*,
426 U.S. 26 (1976) .......... 7

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .......... 8

*Thakur v. Trump*,
176 F.4th 1187 (9th Cir. 2026) .......... 5

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 8

*Van v. LLR, Inc.*,
No. 3:18-CV-00197-JMK, 2023 WL 8434456 (D. Alaska Dec. 5, 2023) .......... 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... *passim*

*Wisc. Pub. Power, Inc. v. FERC*,
493 F.3d 239 (D.C. Cir. 2007) .......... 12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 11

*Yates v. NewRez LLC*,
686 F. Supp. 3d 397 (D. Md. 2023) .......... 11

**STATUTES**

31 U.S.C. § 503 .......... 4

31 U.S.C. § 6307 .......... 4

**RULES**

Fed. R. Civ. P. 23 .......... *passim*

**REGULATIONS**

2 C.F.R. Part 200 .......... 3

2 C.F.R. Part 200, App. I .......... 3

2 C.F.R. § 200.340 .......... 3

42 C.F.R. § 52.2 .......... 3

*Ending Radical and Wasteful Government DEI Program and Preferencing*, Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025) .......... 2, 3

*Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025) .......... 2, 3

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025) .......... 2, 3

*Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, Exec. Order No. 14,222, 90 Fed. Reg. 11,095 (Feb. 26, 2025) .......... 3

**OTHER AUTHORITIES**

1 Newberg and Rubenstein on Class Actions § 1:9 (6th ed. 2025) .......... 8

Statement, Nat'l Insts. of Health, "Advancing NIH's Mission Through a Unified Strategy" (Aug. 15, 2025) .......... 4

## INTRODUCTION

Fourteen individuals (collectively "Plaintiffs") seek class certification on behalf of themselves and two purportedly similar groups of individuals, a "Termination Class" and a "Policy Class." The Plaintiffs, however, have four apparently distinct relationships to NIH grants: (1) those who have a relationship to terminated or denied NIH grants but are nonparties to them (Arghavan Salles, Am. Compl. ¶ 11, Andrea Rosso, *id.* ¶ 13, Ann D. Cohen-Wilson, *id.* ¶ 14, Jonathan Kyle Daw, *id.* ¶ 18, Kelton Minor, *id.* ¶ 20, and Mikaela Smith, *id.* ¶ 24); (2) those who have a relationship to an awarded NIH grant but dislike the agreed upon terms (Dolores Albarracin, *id.* ¶ 15, Heidi Moseson, *id.* ¶ 16, and Jade Pagkas-Bather, *id.* ¶ 17); (3) those who have a relationship to an awarded grant but fear those grants may be terminated, perhaps because their research product may be "inconsistent with the language" and terms to which the grantees agreed (Michael D. Green, *id.* ¶ 21, Sara Jackson, *id.* ¶ 22, and Suzanne Bell, *id.* ¶ 23); and (4) those who have elected not to pursue an NIH grant altogether (Abigail Hatcher, *id.* ¶ 12, and Katie Edwards, *id.* ¶ 19). Notably, they do *not* seek class certification on behalf of the actual parties to their contract, their employers. *See* Motion for Class Certification ("Class Cert. Mot."). ECF No. 52. This Court should deny class certification because: (1) class certification without the nonparty granteees is improper; (2) the proposed class definition is impermissibly ill-defined; (3) the proposed class lacks commonality and typicality due to different factual circumstances that overcome any potentially broader common issues, namely differences in the agreements and terminations; (4) Plaintiffs fail to establish that a Rule 23(b)(2) injunctive action is proper, because any reading of Plaintiffs' class definition would involve multiple subsets; and (5) Plaintiffs and all class members lack standing. In short, Plaintiffs seek to represent some unknown subset of individuals with attenuated and materially varied relationships to the NIH grantmaking process, none of whom appear to be legal parties to contracts, to challenge the present and future termination of awards based upon different authorities and factual situations, and with legal claims that are necessarily individualized to the contexts of specific terminations. Accordingly, class certification is improper.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Do Plaintiffs or a sufficient number of putative class members lack standing

such that class certification is foreclosed?

2. Can Plaintiffs maintain a class action premised on nonparties' contracts with the United States, without including those nonparties?

3. Is Plaintiffs' proposed class too vaguely defined to support certification?

4. Did Plaintiffs meet their burden on commonality and typicality when they allegedly suffer different injuries under different factual circumstances, and when their claims would variously apply to only some class members?

5. Is a Rule 23(b)(2) class action appropriate when Plaintiffs' case necessarily creates different subsets of class members?

## BACKGROUND

On January 20, 2025, President Trump assumed the office of President of the United States. On that day, and in the weeks after, he issued a variety of Executive Orders setting new policy priorities for his administration.

On January 20, the President issued Executive Order No. 14,151, 90 Fed. Reg. 8339, *Ending Radical and Wasteful Government DEI Program and Preferencin*g ("EO 14,151"). This Executive Order included a Termination Provision, which directed that within 60 days of the Order's issuance, each "agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM" shall "terminate, to the maximum extent allowed by law, . . . 'equity-related' grants or contracts[.]" *Id.* § 2(b)(i). Similarly, on January 21, 2025, the President issued Executive Order No. 14,173, 90 Fed. Reg. 8633, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* ("EO 14,173"). This second Executive Order's "purpose" was to ensure that the federal government was "enforcing our civil-rights laws" by "ending illegal preferences and discrimination." *Id.* § 1. The Executive Order also included a Contract Terms Provision, which instructed the OMB Director to "[e]xcise references to DEI and DEIA principles . . . from Federal acquisition, contracting, grants, and financial assistance procedures[.]" *Id.* § 3(c)(ii). Another Executive Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025), entitled *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* ("EO 14,168"), provided, among other things, that "[a]gencies shall take

all necessary steps, as permitted by law, to end the Federal funding of gender ideology." *Id.* § 3(e). It also included a Promoting Gender Ideology Provision, which provided that "Federal funds shall not be used to promote gender ideology" and that "[e]ach agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology." *Id.* § 3(g). All the orders make clear that they must be "implemented consistent with applicable law." *See* EO 14,151 § 4(b); EO 14,173 § 8(b); EO 14,168 § 8(b); *Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, Exec. Order No. 14,222 §§ 3(b), 5(b), 90 Fed. Reg. 11,095 (Feb. 26, 2025).

The President having set new policy priorities, agencies with grantmaking authority began reviewing existing grants and considering next steps. The Federal Government, through various agencies, provided funding to institutions, using contracts and grants that are subject to specified terms and conditions. As a default matter, Office of Management and Budget ("OMB") regulations generally govern a variety of terms for federal grants and contracts, which are incorporated into the terms of the relevant contractual instruments by reference. *See generally* 2 C.F.R. Part 200 (titled "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards"). Usually, an agency will start with a notice of funding opportunity with eligibility information and details of what the agency wishes to fund. *See* 2 C.F.R. Part 200, App. I. In this context, the National Institutes of Health ("NIH") awards grants to grantee institutions, which include the designation of a principal investigator to lead the scientific and technical direction of research projects funded under the grant. *See* 2 C.F.R. Part 200, App. I (b)(2)(C); *see, e.g.*, 42 C.F.R. § 52.2 (discussing the role of principal investigators for grant awards at the NIH). Principal investigators and project managers are not themselves parties to the grant agreements, as illustrated by the grant agreements Plaintiffs rely on here. *See* Am. Compl. ¶¶ 11-23. Rather, the institutions themselves are the contractual parties with all associated rights and responsibilities.

Section 200.340, simply titled "[t]ermination," provides the key substantive and procedural guidelines for termination of awarded grants. Crucially, the Federal Government has preserved the authority to terminate "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, *if an award no longer effectuates the program goals or agency priorities*." *Id.* § 200.340 (emphasis added). This termination authority has been promulgated consistent with Congressional

directives—delegating to OMB the power to manage various aspects of federal grants and contracts, including termination. *See* 31 U.S.C. § 503; *see also id.* § 6307. Awardees are accordingly informed that awards may be terminated based on changes in agency priorities.

In August, 2025, following a series of internal memoranda and discussions on grantmaking, NIH Director Jay Bhattacharya issued a statement on a "unified strategy" for NIH to "enhanc[e] oversight of funded research abroad and reinforc[e] its commitment to responsible stewardship of taxpayer dollars." Statement, Nat'l Insts. of Health, "Advancing NIH's Mission Through a Unified Strategy" (Aug. 15, 2025). This statement provided public guidance on NIH grantmaking, whether certain methodologies were more promising than others and is the operative guidance implementing the President's executive orders. Prior guidance, including a February 21, 2025 NIH priority statement, also deprioritized certain topics such as DEI, gender ideology, and awards to China, which was gradually supplemented through May 2025 by the NIH's Office of Policy for Extramural Research Administration. Statement, Nat'l Insts. of Health, "Restoring Scientific Integrity and Protecting the Public Investment in NIH Awards" (Feb. 21, 2025). Plaintiffs' grants were subject to any number of these varying policies. Am. Compl. ¶¶ 11-21.

## ARGUMENT

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

Rule 23(a) sets out four prerequisites—numerosity, commonality, typicality, and adequate representation—that must be satisfied before a class can be certified in federal court. *See* Fed. R. Civ. P. 23; *Dukes*, 564 U.S. at 349; *Briseno*, 844 F.3d at 1124. These prerequisites "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Dukes*, 564 U.S. at 349 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). A court may grant certification only "after a rigorous analysis . . . [determining] that the prerequisites of Rule 23(a) have been satisfied." *Id.*, at 350-51 (citation omitted).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the three subsections of Rule 23(b). *Id.* at 345. Plaintiffs assert that they meet the requirements of Rule 23(b)(2). Class Cert. Mot. at 13-14. Rule 23(b)(2) requires that plaintiffs pursuing injunctive or declaratory relief show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986–89 (9th Cir. 2011)).“The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). The failure to meet "any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

Plaintiffs' Amended Complaint brings several claims for relief: Plaintiffs bring viewpoint discrimination, compelled speech, and retaliation claims under the First Amendment to the U.S. Constitution, Am. Compl. ¶¶ 202-18, 248-55, and several Administrative Procedure Act ("APA") claims, including that the challenged policy is contrary to the Constitution, *id.* ¶¶ 219-21, contrary to statute, *id.* ¶¶ 234-40, contrary to regulation, *id.* ¶¶ 241-44, and arbitrary and capricious, *id.* ¶¶ 222-33, 256-61. Plaintiffs request the Court "permanently enjoin Defendants from applying the Challenged Policies or any substantially similar policy, guidance, or directive to coerce Plaintiffs and the class to avoid disfavored viewpoint-signifying terms, to condition NIH funding on the same, and/or to terminate, block or delay any new or continuation grants" and order NIH to "re-review applications that were denied or deferred based on the Challenged Policies" and remove any allegedly offending conditions in active grants. Am. Compl., Prayer for Relief.

This is not the first time a court in the Ninth Circuit has considered some of these issues. In another challenge to grant termination policies at other government agencies, a group of six plaintiffs, who later formed two certified classes, also raised First Amendment and APA claims. *Thakur v. Trump*, 176 F.4th 1187 (9th Cir. 2026). The two *Thakur* classes, however, were premised on grant terminations. Here, Plaintiffs seek both a "Termination Class," including "[a]ll principal investigators, multiple-principal investigators, researchers, or project leaders for National Institutes of Health research grants identified for

termination based on the Challenged Policies, whose grants remain terminated[,]" and a far more broad "Policy Class[,]" including "[a]ll persons who have an existing NIH grant and/or who applied or will apply for an NIH grant whose grant or application is subject to termination, denial, rephrasing, or renegotiation based on the Challenged Policies; and all persons who would apply for an NIH grant but for the Challenged Policies." Class Cert. Mot. at 7. *Thakur* also only included principal investigators among named Plaintiffs for its putative class, whereas here, the "Policy Class" includes a far broader swath of individuals with more attenuated relationships to awarded grants. Similarly, the grant terminations in *Thakur* occurred through a mass, singular agency action; whereas here, Plaintiffs are challenging individual terminations and re-negotiations that trickled out throughout this administration with no discernable relationship to each other, other than they were all impacted as part of the administration's rollout of its new research priorities.

## I. CLASS CERTIFICATION SHOULD BE DENIED[1]

### A. Plaintiffs and Class Members Lack Standing

As Plaintiffs acknowledge, standing "is a jurisdictional element that must be satisfied prior to class certification." *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985). Here, for the reasons set out in Defendants' opposition to Plaintiffs' emergency motion, none of the plaintiffs named in the complaint have standing.

"In order to establish standing to enforce" payment of a government contract, or any other terms, a plaintiff must show that they are party to the contract or an intended third-party beneficiary. *Edwards v. Aurora Loan Servs.*, 791 F. Supp. 2d 144, 150 (D.D.C. 2011); *see also Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (holding that plaintiff lacked prudential standing because it could not "enforce the terms of" an agreement "as to which it is neither a party nor a

---

[1] Defendants generally object to class certification on this expedited timeline. It is true that the Ninth Circuit has permitted provisional class certification for preliminary injunctions. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020). But this extraordinary procedure should be saved for only the most extraordinary of situations. Here, Plaintiffs allege, at most, monetary harms flowing from contract terminations directed at third parties. That is insufficient for irreparable harm and should similarly bar this kind of emergency provisional class certification. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also Faculty Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198, 1208 (S.D. Fla. 2007) ("There is no irreparable harm here because the plaintiffs can fund the desired travel themselves and then, if they prevail in this suit, obtain reimbursement. In other words, the harm is financial.").

third-party beneficiary"); *Maher v. United States*, 314 F.3d 600, 605 (Fed. Cir. 2002) ("The remaining shareholders [who were nonparties to the contract] did not have standing to sue and were not intended third-party beneficiaries."); *cf. Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006) ("[W]e hold that a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'").

Plaintiffs are not parties to the agreements they cite. And they are not intended beneficiaries. Plaintiffs lack rights under these contracts—they are neither parties nor intended third-party beneficiaries. *See Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir. 1999). They do not have "a legally protected interest" as project managers or principal investigators working for a nonparty who has received a Federal award. *See Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19-CV-00910 (OAW), 2022 WL 4080325, at *1–2 (D. Conn. Apr. 1, 2022). *But see Thakur*, 176 F.4th at 1205 (concluding that a request for monetary relief accompanied by a temporary loss of a right can establish irreparable harm). Nor have they even attempted to meet their burden to demonstrate "a 'close' relationship with the person who possesses the right" and "a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (citation omitted).

They also lack standing because a "federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *See Murthy v. Missouri*, 603 U.S. 43, 57 (2024). And the Court has forbidden standing based merely on speculation of how a Governmental action may encourage a harm to Plaintiffs. *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41-43 (1976) (holding that causation was not met where plaintiffs asserted that the challenged federal regulations "encouraged" the actions of private entities that resulted in the injury complained of). Because an attenuated chain links Plaintiffs' purported injuries to the termination of nonparty contracts, they lack standing.

Finally, to the extent that Plaintiffs attempt to allege that they will suffer harm in the future due to federal funding cuts, those allegations are too speculative to satisfy Article III standing. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (explaining that any allegation of "threatened injury must be *certainly impending*" (citation omitted)). The mere fact that Plaintiffs' employing institutions receive

federal funding is not nearly "concrete and particularized" enough to challenge *specific* future funding decisions, nor the announcement of specific funding priorities. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Because Plaintiffs lack standing, class certification must fail. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). At the very least, if the Court determines that Plaintiffs lack standing as to a claim or form of relief requested, then no class can recover on that claim or relief. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (explaining, in the class action context, that "[s]tanding must be shown with respect to each form of relief sought"); *accord*, 603 U.S. 43, 61 (2024).

Even if the Court concludes that Plaintiffs, or at least some of them, have standing, the class includes far too many people that would not. As already discussed, Plaintiffs have failed to specify a sufficiently definite and ascertainable definition. *See infra* Part I.C. Therefore, it is entirely unclear who would be in the class if one were certified. If the Court were to construe the class to include any employee who has any involvement in any project at an institution funded by a government grant, as Plaintiffs seemingly imply in their Motion for Provisional Class Certification, then an extraordinary number of class members would lack standing. They would not be parties to any agreement, lack intended beneficiary status, fail to meet their burden to invoke third-party standing, and be asserting even further attenuated harm than Plaintiffs. The Court should deny certification on that basis *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (leaving the question open). At the very least, the distinct subsets of class members that would result defeats certification. *Van v. LLR, Inc.*, No. 3:18-CV-00197-JMK, 2023 WL 8434456, at *9 (D. Alaska Dec. 5, 2023).

**B. Plaintiffs' Class Action Fails to Serve the Purposes of the Class Action**

At the outset—and infecting all the doctrinal arguments below—Plaintiffs' motion suffers from a fatal flaw: it fails to serve the purposes of a class action, i.e. efficient and preclusive resolution of disputes. "In a class action . . . a person not named as a party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation." *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008). Accordingly, Rule 23 is "designed to further procedural fairness and

efficiency," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 402 (2010), including "by preventing inconsistent adjudications," 1 Newberg and Rubenstein on Class Actions § 1:9 (6th ed. 2025). This suit does not serve those interests.

As discussed in more detail below and in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, Plaintiffs are not parties to the challenged contract and grant agreements. As a result, this proposed class action does not—cannot—further the goals of Rule 23. Because the proposed class does not exclusively cover all parties with legal interests in the challenged contracts (indeed, it does not cover *any* parties with legal interests in the challenged agreements), this class action cannot prevent inconsistent adjudications. Even assuming that Plaintiffs can challenge specific grant or contract agreements in this court (and they cannot), the proposed class would not include the institutions that actually hold the contracts. The risk of inconsistent adjudication is obvious: the purported class members could receive a judgment related to a contract and the actual contracting institution could receive a judgment related to the same contract—and those judgments could be in conflict. That does not serve the interests of justice. This fact dooms Plaintiffs' class definition, because it does not sweep in all the relevant parties and thus cannot prevent inconsistent adjudication. It also renders Plaintiffs unable to satisfy commonality and typicality. And it illustrates Plaintiffs' lack of standing here. For this reason alone, class certification is inappropriate.

**C. Plaintiffs' Class Definition is Improper**

Plaintiffs' class definition is flawed for the same reason that their related emergency motion fails. They refer to their "Policy Class" as "[a]ll persons who have an existing NIH grant and/or who applied or will apply for an NIH grant whose grant or application is subject to termination, denial, rephrasing, or renegotiation based on the Challenged Policies; and all persons who would apply for an NIH grant but for the Challenged Policies[.]" *Id.* But Plaintiffs have not alleged that any research grant of theirs has been terminated, denied, suspended, or reduced. Nor are the grants to which certain Plaintiffs have applied—or chosen not to apply—*their* grants. Instead, each Plaintiff has identified awards between the Federal Government and various educational institutions. So Plaintiffs' class hinges on a possessive term that is impermissibly vague.

That Plaintiffs have set forth a "vaguely defined" class is sufficient to deny their motion. *Briseno*, 844 F.3d at 1124 n.3, n.4. As a rule, a class must be "sufficiently definite to conform to Rule 23." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). This requires that "the class is defined with objective criteria and [] is administratively feasible to determine whether a particular individual is a member of the class." *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2022 WL 16556802, at *8 (N.D. Cal. Oct. 31, 2022). A class definition should be "precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (citation omitted). In sum, "a proposed class must be ascertainable in the sense that the proposed class must be sufficiently defined and not vague." *J.L. v. Cissna*, No. 18-CV-04914-NC, 2019 WL 415579, at *7 (N.D. Cal. Feb. 1, 2019).

As set forth by Plaintiffs, however, the class definition fails this test. For the first sub-class, Plaintiffs are listed as project managers or principal investigators on certain terminated grants between a range of educational institutions. *Supra* Background. A straightforward reading of Plaintiffs' class definition would exclude them because not one has identified a research grant of his or her own that has been modified or terminated.

Plaintiffs presumably do not mean to exclude themselves. Which means their definition of being a person "whose grant[s]" have been affected must be something more than having an award agreement with the government. The question of what that could mean, however, is terribly opaque and could extend to anyone at any grant-awarded institution who is impacted in some way by a grant. For example, could a grant officer working for a grant-awarded institution become part of this suit because they are the point of contact and manage an educational institution's grant portfolio? Could an undergraduate research assistant? These are foundational challenges illustrating the vagueness of Plaintiffs' definition.

Altogether, Plaintiffs' definition fails the most important test—appropriately defining a class. Plaintiffs are not "UC researchers[] whose research grants have been [affected]." *See id.* And any reading of that sentence which would ultimately include them is so vague as to fail. Consequently, class certification on Plaintiffs' proposed definition should be denied.

**D. Plaintiffs Lack Commonality and Typicality**

Plaintiffs have failed to demonstrate that "a single significant question of law or fact," *Abdullah v.*

*U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (citation omitted), common to the class suffices to render class action treatment appropriate. "What matters to class certification is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (cleaned up). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (citation omitted).

The commonality requirement is especially rigorous where, as here, Plaintiffs seek class certification under Rule 23(b)(2), which requires that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For certification under Rule 23(b)(2), plaintiffs must show that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted).

The commonality and typicality requirements of Rule 23(a) are interrelated and, in some instances, merge. *Id.* at 349 n.5. Commonality requires that "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 349. Typicality focuses on how the named plaintiffs' claims relate to those of the potential class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In sum, "[b]oth [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. And adequacy requires named plaintiffs to "fairly and adequately protect the interests of the class without a conflict of interest with the absent class members." Mem. Op. at 56 (quoting *Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 405 (D. Md. 2023)) (cleaned up).

First, typicality necessarily fails here. And "the test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). While Plaintiffs'

"Termination Class" shares an arguably typical injury, their "Policy Class" does not. Indeed, Plaintiffs' description of their "Policy Class" is telling, listing a smattering of loosely related potential injuries: It includes anyone who has a grant, applied for a grant, or wants a grant, but is concerned that the challenged policies will impact that grant. *See* Class Cert. Mot. at 7. Consider, for example, Michael D. Green, who is a researcher for an awarded grant but is concerned that it will be terminated because his research may be "inconsistent with the language" approved in the grant. Am. Compl. ¶ 21. After his institution *accepted* this grant, understanding of its terms, Mr. Green is concerned the Government may determine he is using those grant funds for research *not authorized* by that grant and terminate it. *See id.* That is a different animal entirely than Abigail Hatcher, who has elected not to apply for a grant whatsoever and is now "considering leaving research altogether[.]" *Id.* ¶ 12. Perhaps at a bird's eye view, squinting, these two plaintiffs share some broad injury, but it does not satisfy Rule 23's exacting typicality requirements. Accordingly, Plaintiffs' certification of their "Policy Class" must fail.

Various commonality roadblocks also bar Plaintiffs' one-size-fits-all class action suit. That is because "differences in the factual background of each claim will affect the outcome of the legal issue." *Califano*, 442 U.S. at 701. For example, their First Amendment claim only applies to terminations based on those Executive Orders that Plaintiffs allege consider or target viewpoint. *See* Am. Compl. ¶¶ 87-91 (citing several such orders). But their proposed class is wider, not just including those Executive Orders, but also various policy memoranda and directives, which Plaintiffs allege were in place at different times and would have purportedly affected different grants and different putative class members in discrete ways. Thus, class members citing grants terminated or modified at different times may not necessarily claim commonality. Resolution of those claims would not sufficiently resolve a universal question. *Dukes*, 564 U.S. at 349.

Plaintiffs' arbitrary and capricious claims, under the APA, are akin to a rational basis or reasonableness inquiry in this context. *Wisc. Pub. Power, Inc. v. FERC*, 493 F.3d 239, 266 (D.C. Cir. 2007) (per curiam); *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 261 (Fed. Cl. 2016). That kind of review is inappropriate at a class-wide level, rather, it is particularized. *See Padilla v. ICE*, 354 F. Supp. 3d 1218, 1229-30 (W.D. Wash. 2018) (questioning "whether the issue of 'unreasonable delay' is amenable

to resolution by class action lawsuit, as, absent a statutory deadline," the court's analysis "will require individualized factual inquiries to determine . . . 'reasonableness.'") (citation omitted).

All told, for each claim, class members' individual factual circumstances must be ascertained to determine if the claim succeeds. Because that fails to "generate *common answers* apt to drive the resolution of the litigation," certification should be denied. *See Dukes*, 564 U.S. at 350 (emphasis added); *see also id.* at 352 ("Without some glue holding the alleged reasons for all those [results] together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question."); *cf. J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (affirming denial of class certification because "plaintiffs merely attempt to broadly conflate a variety of claims [under the IDEA and other statutes] to establish commonality via an allegation of 'systemic failures'"); *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 568-69 (N.D. Cal. 2009) (denying class certification in part because defendants' liability depended on individualized proof).

Plaintiffs have attempted to craft their complaint, and frame their arguments, in a manner that makes disparate circumstances seem common. But "any competently crafted class complaint literally raises common 'questions.'" *Dukes*, 564 U.S. at 349 (cleaned up). The question is whether, on further investigation, those purportedly common questions fall to the disparate individual circumstances. The differences flowing through the class here ultimately overcome any otherwise common questions and therefore certification should be denied.

**E. Plaintiffs Cannot Invoke Rule 23(b)(2) Because Class-Wide Relief is Unavailable**

For much the same reasons set out above, Rule 23(b)(2) relief is particularly inappropriate. That provision "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Class relief must be "indivisible," premised on "conduct . . . that . . . can be enjoined or declared unlawful only as to all of the class members or as to none." *Id.* "[T]he (b)(2) class is distinguished . . . by class cohesiveness . . . Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983).

Here, for the foregoing reasons, there cannot be a single adjudication for purposes of Rule 23(b)(2). At best, class members belong to various subset groups for which a universal question may be answered, or an injunction may suffice. But "Rule 23(b)(2) operates under the presumption that . . . the case will not depend on adjudication of facts particular to any subset of the class nor require [distinct remedies]." *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000). That is precisely what would be required here. Class members citing different factual injuries and circumstances, such as grant-specific renegotiations or grant applications in different procedural postures, or with different theories of injury altogether, as in the Policy Class, generate various subset groups within the larger class definition that Plaintiffs offer. Because this invariably conflicts with the premise of a Rule 23(b)(2) action, certification is improper.

**CONCLUSION**

For these reasons, this Court should deny Plaintiffs' Motion for Class Certification.

Dated: October 16, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Jordan A. Hulseberg*
JORDAN A. HULSEBERG
(D.C. Bar No. 90033542)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-3856
Email: Jordan.A.Hulseberg2@usdoj.gov

*Attorneys for United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Jordan A. Hulseberg*