BRETT A. SHUMATE
Assistant Attorney General
Civil Division
JOSEPH E. BORSON
Assistant Branch Director
JORDAN A. HULSEBERG (D.C. Bar No. 90033542)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-3856
Email: jordan.a.hulseberg2@usdoj.gov

*Attorneys for United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARGHAVAN SALLES, *et al.*, | |
| Plaintiffs, | Case No. 26-cv-10510 |
| v. | DEFENDANTS' LETTER ON SUPPLEMENTAL BRIEFING |
| NATIONAL INSTITUTES OF HEALTH, *et al.*, | |
| Defendants. | Judge: Hon. Vince Chhabria |

**LETTER ON SUPPLEMENTAL BRIEFING**

On October 14, 2026, in a Text Order, ECF No. 81, the Court instructed the parties to file a letter brief on the following questions no later than October 21, 2026:

> Is there any reason why the class certification motion (Dkt. No. 52 ) needs to be a motion for "provisional" class certification as opposed to simply a motion for class certification? If not, should the Court simply treat it as a motion for class certification? Is there any reason why the preliminary injunction motion (Dkt. No. 33 ) can't be a summary judgment motion? If not, do the parties agree to converting it? The answers to these questions should include an explanation of the state of the administrative record.

In compliance with that Order, Defendants respectfully share their positions: Plaintiffs' Motions for Provisional Class Certification and Preliminary Injunction should not be converted to a final

motion for class certification or motion for summary judgment. Furthermore, the Administrative Record is forthcoming, and it should include the individual grants Plaintiffs identify in their Amended Complaint.

**1. Plaintiffs' Motion for Provisional Class Certification *should not* be converted to a final Motion for Class Certification.**

Plaintiffs' Motion for Provisional Class Certification is premature and thus should not be converted to a final Motion for Class Certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("Frequently that rigorous [class certification] analysis will entail some overlap with the merits of the plaintiff's underlying claim." (citation modified)).

First, the Administrative Record in this case, which has yet to be produced, will be instructive to this Court in determining whether Plaintiffs' two proposed classes should be certified. One of Defendants' principal arguments in their Opposition to Plaintiffs' Motion for Provisional Class Certification ("Class Cert. Opp'n"), ECF No. 85, is that Plaintiffs' proposed classes lack commonality and typicality because Plaintiffs challenge discrete agency actions involving different alleged injuries and factual circumstances. *Id.* at 12. The Administrative Record, which at minimum must include the relevant administrative history and disposition of each of the grants that Plaintiffs identify, *see infra* Part 3, would include the specific administrative history and treatment of each grant and its termination, denial, or renegotiation. The Administrative Record would thus demonstrate how each grant's history and treatment is too different to establish commonality and typicality for class certification purposes. This is especially true of Plaintiffs' proposed "Policy Class." *See* Class Cert. Opp'n at 12 (identifying the potpourri of alleged injuries by certain named Plaintiffs and noting Plaintiffs challenge agency action occurring during different "directives" or public statements). Accordingly, Defendants should be permitted sufficient time to produce an Administrative Record to support this argument, and the Court should decline to issue

a final ruling on class certification until it can review additional briefing incorporating the Administrative Record.

Second, for the reasons stated in Defendants' Opposition to Plaintiffs' Motion for Provisional Class Certification, *see* ECF No. 85, Defendants generally object to class certification on an expedited timeline—whether provisional or not. It is true that the Ninth Circuit has permitted provisional class certification for preliminary injunctions. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020). But this extraordinary procedure should be saved for only the most extraordinary of situations. Here, Plaintiffs allege, at most, monetary harms flowing from contract terminations directed at third parties. That is insufficient for irreparable harm and should similarly bar this kind of emergency provisional class certification. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also Faculty Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198, 1208 (S.D. Fla. 2007) (concluding financial injury is not irreparable).

**2. Plaintiffs' Motion for Preliminary Injunction *should not* be converted to a Motion for Summary Judgment.**

Likewise, the Administrative Record will be instructive to this Court as it considers the Parties' forthcoming cross-motions for summary judgment. As Defendants argued in their Opposition to Plaintiffs' Motion for Preliminary Injunction ("PI Opp'n"), ECF No. 84, the executive orders, "directive[s]," and public statements which Plaintiffs challenge are not final agency action. *Id.* at 16-18. Instead, the operative agency actions of which Plaintiffs seek review are the discrete denials, terminations, and renegotiations individually affecting each grant. *Id.* These arguments represent the crux of Defendants' defense under the APA, *see id.* at 19-25, and the Administrative Record is the essential and sole factual record from which the Court can make this determination. *Tolowa Nation v. U.S.*, 380 F. Supp. 3d 959, 962-63 (N.D. Cal. 2019) ("Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the

administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)). The Administrative Record would thus permit the Court to make a more informed determination at summary judgment than the Court could now, ensuring a more robust record should either party choose to appeal.

**3. The Administrative Record is forthcoming and should include individual grant information.**

Grants—their termination, denial, and renegotiation—are an essential component of this case, and Plaintiffs have indicated as much, extensively detailing how they are inseparably linked to these grants. *See*, *e.g.*, Am. Compl. ¶¶ 11-24. Unlike other grant termination cases, these grants were not terminated through a single, "en masse" agency action. *See Thakur v. Trump*, 176 F.4th 1187, 1193 (9th Cir. 2026). Instead, various types of grant-related action trickled out throughout this administration, occurring during different "directives" or public statements, on a case-by-case basis, with no discernable relationship to each other, other than they were all impacted as part of the administration's rollout of its new research priorities. *See generally* Am. Compl. ¶¶ 92-136.

"The whole administrative record . . . consists of all document[s] and materials directly or indirectly considered by agency decision-makers[.]" *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 683 (N.D. Cal. 2020) (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)). NIH necessarily considered each individual grants' subject matter and specific temporal and factual circumstances—e.g. correspondence during renegotiation, award cost, operative policy guidance—when it terminated, denied, or renegotiated the grants of which Plaintiffs complain. Thus, that information *must* be included in the Administrative Record. Even if Plaintiffs had brought an individual suit rather than a class action, Plaintiffs would not have challenged a final

agency action, and the operative action to review would be the discrete denial, termination, or renegotiation affecting the grant.

Accordingly, the Administrative Record should include the administrative history and treatment of each of the grants that Plaintiffs identify in their Amended Complaint. This is the scope of the Administrative Record that Defendants intend to prepare. Defendants anticipate it will take approximately one month to produce an administrative record that contains all relevant policy guidance and the documents associated with each grant that Plaintiffs identify in their Amended Complaint. To the extent that the Court certifies either of Plaintiffs' proposed classes, the Administrative Record should be proportionate in scope. But given the sweepingly broad classes that Plaintiffs propose—a "Termination Class" that would include all terminated grants, Am. Compl. ¶ 185, and a "Policy Class" that seemingly includes *all* grants and grant applications, Am. Compl. ¶ 193—it would be impractical to produce an Administrative Record of that scale, which may delay these proceedings. Should the Court certify either of Plaintiffs' proposed classes, the Parties can confer on the appropriate scope of the Administrative Record, which may include a targeted sample of termination and renegotiation records; such a sample could provide relevant evidence while reducing the volume, redundancy, and inclusion of all grant materials.

Dated: October 21, 2026 Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director

*<u>/s/ Jordan A. Hulseberg</u>*
JORDAN A. HULSEBERG
(D.C. Bar No. 90033542)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.

Washington, D.C. 20005
Tel.: (202) 598-3856
Email: Jordan.A.Hulseberg2@usdoj.gov