**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
OLGA AKSELROD (NY Bar No. 4132825) (Appearance *Pro Hac Vice*)
oakselrod@aclu.org
VERA EIDELMAN (CA Bar No. 308535)
veidelman@aclu.org
RACHEL MEEROPOL (NY Bar No. 4100954) (Appearance *Pro Hac Vice*)
rmeeropol@aclu.org
ALEXIS AGATHOCLEOUS (NY Bar No. 4227062) (Appearance *Pro Hac Vice*)
aagathocleous@aclu.org
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2659

*Attorneys for Plaintiffs*

*(Additional Counsel on Following Page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ARGHAVAN SALLES; ABIGAIL HATCHER; ANDREA ROSSO; ANN D. COHEN-WILSON; DOLORES ALBARRACÍN; HEIDI MOSESON; JADE PAGKAS-BATHER; JONATHAN KYLE DAW; KATIE EDWARDS; KELTON MINOR; MICHAEL D. GREEN; SARA JACKSON; SUZANNE BELL; and MIKAELA SMITH, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

NATIONAL INSTITUTES OF HEALTH; JAY BHATTACHARYA, *in his official capacity as Director of the National Institutes of Health*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., *in his official capacity as Secretary of the United States Department of Health and Human Services*; and UNITED STATES DOGE SERVICE,

Defendants.

Case No. 3:26-cv-10510-VC

**REPLY TO OPPOSITION TO MOTION FOR STAY AND PRELIMINARY INJUNCTION**

Judge: Hon. Vince Chhabria
Date: November 18, 2026
Time: 2:00 PM
Courtroom: 3 – 17th Floor

*(Additional Counsel on Behalf of Plaintiffs)*

**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION OF NORTHERN CALIFORNIA**
GRAYCE ZELPHIN (CA Bar No. 279112)
gzelphin@aclunc.org
CHESSIE THACHER (CA Bar No. 296767)
cthacher@aclunc.org
NEIL K. SAWHNEY (CA Bar No. 300130)
nsawhney@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

**PROTECT DEMOCRACY PROJECT**
SHALINI AGARWAL (DC Bar No. 990963) (Appearance *Pro Hac Vice*)
shalini.agarwal@protectdemocracy.org
2020 Pennsylvania Avenue, NW, Suite 163
Washington, DC 20006
KENNETH PARRENO (TX Bar No. 24130477) (Appearance *Pro Hac Vice*)
kenneth.parreno@protectdemocracy.org
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
LISA S. MANKOFSKY (DC Bar No. 411931) (Appearance *Pro Hac Vice*)
lmankofsky@cspi.org
OSCAR HEANUE (DC Bar No. 90036939) (Appearance *Pro Hac Vice*)
oheanue@cspi.org
1250 I Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 777-8381

**JACOBSON LAWYERS GROUP PLLC**
DANIEL F. JACOBSON (DC Bar No. 1016621) (Appearance *Pro Hac Vice*)
dan@jacobsonlawyersgroup.com
LYNN D. EISENBERG (DC Bar No. 1017511) (Appearance *Pro Hac Vice*)
lynn@jacobsonlawyersgroup.com
STEPHEN K. WIRTH (DC Bar No. 1034038) (Appearance *Pro Hac Vice*)
stephen@jacobsonlawyersgroup.com
5100 Wisconsin Avenue, NW, Suite 301
Washington, DC 20016
Telephone: (301) 823-1148

## TABLE OF CONTENTS

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

I. The Court Has Jurisdiction Over Plaintiffs' Claims. .......... 1

A. The Tucker Act Does Not Deprive the Court of Jurisdiction. .......... 1

1. The Court Has Jurisdiction Over Plaintiffs' First Amendment Claims. .......... 1

2. The Court Has Jurisdiction Over the Relevant APA Claims. .......... 5

B. Plaintiffs Have Standing. .......... 5

II. Plaintiffs Are Likely to Succeed on Their First Amendment Claims. .......... 7

III. Plaintiffs Are Likely to Succeed on Their APA Claims. .......... 9

A. The Challenged Policies Are Final Agency Actions. .......... 9

B. The Challenged Policies Are Not Committed to Agency Discretion. .......... 9

C. Defendants Have Waived Any Defense to the Merits of Plaintiffs' Arbitrary and Capricious Claim. .......... 10

D. The Challenged Policies are Contrary to Law. .......... 11

E. The Challenged Policies Violate Regulations. .......... 13

IV. Plaintiffs Have Established Irreparable Harm. .......... 14

V. The Equities and Public Interest Support Injunctive Relief. .......... 15

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado, Inc. v. McAleenan*,
394 F. Supp. 3d 1168 (S.D. Cal. 2019) .......... 9

*Am. Ass'n of Physicians for Hum. Rts. v. Nat'l Insts. of Health*,
795 F. Supp. 3d 678 (D. Md. 2025) .......... 6

*Am. Ass'n of Univ. Professors v. Trump*,
815 F. Supp. 3d 907 (N.D. Cal. 2025) .......... 2, 4, 6

*Am. Bar Ass'n v. U.S. Dep't of Just.*,
783 F. Supp. 3d 236 (D.D.C. 2025) .......... 4

*Am. Beverage Ass'n v. City & Cnty. of S.F.*,
916 F.3d 749 (9th Cir. 2019) .......... 15

*Am. Pub. Health Ass'n v. Nat'l Insts. of Health*,
145 F.4th 39 (1st Cir. 2025) .......... 10

*Am. Pub. Health Ass'n v. Nat'l Insts. of Health*,
791 F. Supp. 3d 119 (D. Mass. 2025) .......... 9

*Ass'n of Data Processing Serv. Org. v. Camp*,
397 U.S. 150 (1970) .......... 6

*Beecham v. United States*,
511 U.S. 368 (1994) .......... 13

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 9

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) .......... 8

*Caccuri v. Sony Interactive Ent. LLC*,
735 F. Supp. 3d 1139 (N.D. Cal. 2024) .......... 7

*California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
29 F.4th 468 (9th Cir. 2022) .......... 14

*California v. Wright*,
No. 26-cv-01417-RFL, 2026 WL 1915590 (N.D. Cal. July 2, 2026) .......... 2, 4

*Chamber of Com. of U.S. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) .......... 2

*City of Saint Paul v. Wright*,
816 F. Supp. 3d 65 (D.D.C. 2026)....1, 3

*Cmty. Legal Servs. in E. Palo Alto v. U. S. Dep't of Health & Hum. Servs.*,
155 F.4th 1099 (9th Cir. 2025)....3, 4, 5

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
137 F.4th 932 (9th Cir. 2025)....4

*Columbia Broad. Sys., Inc. v. United States*,
316 U.S. 407 (1942)....7

*Columbus Reg'l Hosp. v. United States*,
990 F.3d 1330 (Fed. Cir. 2021)....4

*Dalton v. Specter*,
511 U.S. 462 (1994)....3

*Dep't of Com. v. New York*,
588 U.S. 752 (2019)....10

*Dep't of Educ. v. California*,
604 U.S. 650 (2025)....1, 2, 15

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014)....14

*Doe v. Trump*,
784 F. Supp. 3d 1297 (N.D. Cal. 2025)....15

*Elrod v. Burns*,
427 U.S. 347 (1976)....14

*Finley v. Nat'l Endowment for the Arts*,
795 F. Supp. 1457 (C.D. Cal. 1992)....6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010)....1

*Gale v. First Franklin Loan Servs.*,
701 F.3d 1240 (9th Cir. 2012)....13

*Imperial Sovereign Ct. of Mont. v. Knudsen*,
170 F.4th 820 (9th Cir. 2026)....14

*Int'l Longshoremen's & Warehousemen's Union v. Meese*,
891 F.2d 1374 (9th Cir. 1989)....6

*Kaahumanu v. Hawaii*,
682 F.3d 789 (9th Cir. 2012) ............ 5

*LeBlanc v. United* States,
50 F.3d 1025 (Fed. Cir. 1995) ............ 2

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001) ............ 7

*Lewis v. Sec'y of Navy*,
195 F. Supp. 3d 277 (D.D.C. 2016) ............ 12

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ............ 9, 10

*Lipsman v. Sec'y of Army*,
335 F. Supp. 2d 48 (D.D.C. 2004) ............ 12

*Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*,
729 F.3d 1025 (9th Cir. 2013) ............ 10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) ............ 3

*McCarthy v. F.D.I.C.*,
348 F.3d 1075 (9th Cir. 2003) ............ 7

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ............ 3

*Metro. Gov't of Nashville & Davidson Cnty. v. U.S. Dep't of Homeland Sec.*,
No. CV 26-02886 (AHA), 2026 WL 2905123 (D.D.C. Sept. 28, 2026) ............ 5

*Milk Train, Inc. v. Veneman*,
310 F.3d 747 (D.C. Cir. 2002) ............ 10

*Miller v. Lehman*,
801 F.2d 492 (D.C. Cir. 1986) ............ 12

*Mobley v. Workday, Inc.*,
740 F. Supp. 3d 796 (N.D. Cal. 2024) ............ 11

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025) ............ 1, 2, 5

*NEA v. Finley*,
524 U.S. 569 (1998) ............ 7

*New Jersey v. OMB*,
837 F. Supp. 3d 258 (D. Mass. 2026)....13, 14

*New York v. U.S. Dep't of Energy*,
No. 6:25-cv-01458-MTK, 2025 WL 3140578 (D. Or. Nov. 10, 2025)....9

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.*,
477 F.3d 668 (9th Cir. 2007)....7

*Oracle Int'l Corp. v. Rimini St., Inc.*,
123 F.4th 986 (9th Cir. 2024)....13

*Pacito v. Trump*,
169 F.4th 895 (9th Cir. 2026)....4

*Pennsylvania Dep't of Pub. Welfare v. United States*,
48 Fed. Cl. 785 (2001)....4

*Pereida v. Wilkinson*,
592 U.S. 224 (2021)....12

*Perkins Coie LLP v. U.S. Dep't of Just.*,
783 F. Supp. 3d 105 (D.D.C. 2025)....6

*President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*,
798 F. Supp. 3d 77 (D. Mass. 2025)....6

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
515 U.S. 819 (1995)....7

*S.F. Unified Sch. Dist. v. AmeriCorps*,
784 F. Supp. 3d 1280 (N.D. Cal. 2025)....10

*Shawnee Tribe v. Mnuchin*,
984 F.3d 94 (D.C. Cir. 2021)....10

*Sherley v. Sebelius*,
776 F. Supp. 2d 1 (D.D.C. 2011)....6

*Sustainability Inst. v. Trump*,
165 F.4th 817 (4th Cir. 2026)....3

*Sustainability Inst. v. Trump*,
No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025)....3

*Thakur v. Trump*,
787 F. Supp. 3d 955 (N.D. Cal. 2025)....passim

*Thakur v. Trump*,
176 F.4th 1187 (9th Cir. 2026)… ........................................................................8, 14, 15

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) ............................................................................................12

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
136 F.3d 641 (9th Cir. 1998) ......................................................................................4

*United States v. Connolly*,
716 F.2d 882 (Fed. Cir. 1983) .....................................................................................2

*Washington v. U.S. Dep't of Educ.*,
161 F.4th 1136 (9th Cir. 2025) ...............................................................................5, 10

*Webster v. Doe*,
486 U.S. 592 (1988) ..................................................................................................2

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
586 U.S. 9 (2018) .....................................................................................................9

**Statutes**

10 U.S.C. § 1552(a) .....................................................................................................12

10 U.S.C. § 1552(a)(1) .................................................................................................12

28 U.S.C. § 1331 ..........................................................................................................1

28 U.S.C. § 1346(a)(2) ..................................................................................................2

28 U.S.C. § 1491(a)(1) ..................................................................................................5

31 U.S.C. §§ 6303–6305 ................................................................................................3

41 U.S.C. § 7102(a) .......................................................................................................3

42 U.S.C. § 241(a)(3) .....................................................................................................4

42 U.S.C. § 241(a)(7) .....................................................................................................4

42 U.S.C. § 282(b)(8)(D)(ii).........................................................................................10

42 U.S.C. § 283p .........................................................................................................10

42 U.S.C. § 284 ...........................................................................................................11

42 U.S.C. § 284(a)(1) ...................................................................................................11

42 U.S.C. § 284(b)(1) ...................................................................................................11

42 U.S.C. § 284(b)(1)(M) .......... 12

42 U.S.C. § 284(b)(2) .......... 11, 12

42 U.S.C. § 284(b)(2)(A) .......... 4

42 U.S.C. § 284(b)(2)(B) .......... 4, 11

42 U.S.C. § 284(b)(3) .......... 11, 12

42 U.S.C. § 284(b)(3)(B) .......... 12

42 U.S.C. § 285t(b) .......... 10

5 U.S.C. § 701(a)(2) .......... 9

**Regulations**

2 C.F.R. § 200.340(a)(3) .......... 13

2 C.F.R. § 200.340(a)(4) .......... 10, 13

2 C.F.R. Pt. 200 .......... 14

As explained in Plaintiffs' Motion for Stay and Preliminary Injunction, ECF 33 ("Motion" or "Mot."), urgent intervention is needed to address Defendants' ongoing and systemic violations of the First Amendment and the Administrative Procedure Act ("APA"). Defendants' brief in Opposition, ECF 84 ("Opposition" or "Opp."), largely does not dispute Plaintiffs' evidence or the harms to Plaintiffs, study participants, and public health. Instead, Defendants erroneously frame this as a contract case over which this Court has no jurisdiction, and which Plaintiffs lack standing to bring. Defendants' limited merits responses fare no better. For the below reasons, Plaintiffs' Motion should be granted.

## I. The Court Has Jurisdiction Over Plaintiffs' Claims.

### A. The Tucker Act Does Not Deprive the Court of Jurisdiction.

Defendants assert that the Tucker Act divests this Court of jurisdiction. It is unclear whether their argument is limited to the "grant-termination claims," as stated in the section heading, *see* Opp. at 16, or is meant to reach all claims, *see* Opp. at 22 (asserting that "[t]his Court lacks jurisdiction over this challenge in full").[1] Regardless, the argument fails.

#### 1. The Court Has Jurisdiction Over Plaintiffs' First Amendment Claims.

Plaintiffs bring First Amendment challenges to certain NIH policies, the "Challenged Policies" (Claims 1 and 2), and to terminations made under the Challenged Policies, the "Terminations" (Claims 7, 8, and 9). These are equitable constitutional claims to enjoin federal officials, *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010), not APA claims, and this Court has federal question jurisdiction over them under 28 U.S.C. § 1331.[2]

Defendants rely heavily on *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025), and *Dep't of Educ. v. California*, 604 U.S. 650 (2025), to argue that the Tucker Act bars jurisdiction here, but these cases were "brought under the APA, not the Constitution." *City of Saint Paul v. Wright*, 816 F. Supp. 3d 65, 71 (D.D.C. 2026). In both, the Court's holdings turned on section 702(2) of the APA, which carves out an exception to the APA's waiver of sovereign immunity when another statute granting consent to suit "expressly or impliedly forbids the relief which is sought." *NIH*, 145 S.

---

[1] Plaintiffs refer to ECF-generated page numbers when citing previously filed documents.

[2] Claim 3 is a contrary-to-constitutional-right APA claim, but it solely applies to the Challenged Policies, and the District Court has jurisdiction over it for the reasons discussed *infra* at I.A.2.

Ct. at 2660 (quoting *California*, 604 U.S. at 651). Those holdings (which were preliminary) have no bearing here for two principal reasons.

First, as Plaintiffs explained, Mot. at 38, and to which Defendants make no response, litigants need not rely on a statutory waiver of sovereign immunity when bringing freestanding constitutional claims. "'[S]uits alleging that a federal official violated the Constitution'—and seeking equitable relief—are not 'against the sovereign' and therefore are not barred by sovereign immunity." *California v. Wright*, No. 26-cv-01417-RFL, 2026 WL 1915590, at *7–9 (N.D. Cal. July 2, 2026) (citation omitted) (collecting cases). Because the "officer is not doing the business which the sovereign has empowered him to do," "there is no sovereign immunity to waive—it never attached in the first place." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996) (citation modified). Thus, "the Tucker Act's limitation on the APA's sovereign immunity waiver is irrelevant." *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 958 (N.D. Cal. 2025) ("*AAUP*"), *appeal dismissed*, No. 26-263, 2026 WL 1049175 (9th Cir. Feb. 11, 2026); *see also Wright*, 2026 WL 1915590, at *9.

Second, this Court *must* have jurisdiction over Plaintiffs' First Amendment claims because otherwise Plaintiffs would have *no judicial forum* in which to assert them. The Court of Federal Claims is not an option because the Tucker Act grants jurisdiction only over claims under constitutional provisions that, unlike the First Amendment, are money-mandating. *See LeBlanc v. United* States, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *see also United States v. Connolly*, 716 F.2d 882, 887–88 (Fed. Cir. 1983) ("[O]n any theory, the Claims Court lacks jurisdiction over appellee's first amendment claim."). Where a jurisdiction-stripping statute would leave a plaintiff with no forum to bring a constitutional claim, Congress' "intent" to produce that outcome "must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988). The requisite showing is "heightened . . . in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (citation modified). Neither the Tucker Act nor any other statute clearly precludes district court jurisdiction over constitutional claims. *See Wright*, 2026 WL 1915590, at *9; *accord AAUP*, 2025 WL 3187762, at *22.

Defendants assert that "Congress has by statute explicitly forbidden district court jurisdiction for such claims" under 28 U.S.C. § 1346(a)(2), Opp. at 17, but even if § 1346(a)(2) had any relevance to

First Amendment claims (and Defendants cite no case suggesting it does), on its face the provision only concerns claims that "are subject to sections 7104(b)(1) and 7107(a)(1) of title 41," *i.e.*, the Contract Disputes Act. That Act solely applies to "procurement" contracts and contracts for "the disposal of personal property," not grants. *See* 41 U.S.C. § 7102(a); *see also* 31 U.S.C. §§ 6303–6305 (distinguishing procurement contracts, grants, and cooperative agreements).

Defendants also rely, Opp. at 21, on an out-of-circuit stay decision in *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025), which concluded in a single sentence that "it appears unlikely" that the district court had jurisdiction over the plaintiffs' constitutional claims against certain grant terminations. But the Fourth Circuit subsequently explained in a published opinion in the same case that it came to that conclusion because the plaintiffs' self-styled separation-of-powers claims were actually *statutory*, not constitutional. *See Sustainability Inst. v. Trump*, 165 F.4th 817, 830–32 (4th Cir. 2026) (citing *Dalton v. Specter*, 511 U.S. 462 (1994)). The Fourth Circuit acknowledged that, under *Webster*, a clear congressional statement would be needed to preclude true constitutional claims. *Id.*

Unlike *Sustainability Inst.*, Plaintiffs' First Amendment claims are unquestionably constitutional in nature. Defendants nevertheless assert that "regardless of how a claim is styled," what matters is whether its "essence" is contractual. Opp. at 18. To answer that question, they say, *id.*, the Court should look to the *Megapulse* test, created by the D.C. Circuit to assess whether the Tucker Act impliedly precludes certain APA claims. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982). As noted above, applying APA tests to constitutional claims is a category error. *See Wright*, 2026 WL 1915590, at *10 (not applying *Megapulse* to constitutional claims). But even if *Megapulse* were proper to apply here, it would confirm that this Court has jurisdiction over the First Amendment claims.

*Megapulse* first asks what "the source of the rights" is for a plaintiff's claims. 672 F.2d at 968. It then looks to the "type of relief sought (or appropriate)." *Id.* Under binding precedent, the answer to the first question is determinative. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 n.3 (2012) (holding that "limitations on relief cannot sensibly be understood apart from the claims to which they attach"); *Cmty. Legal Servs. in E. Palo Alto v. U. S. Dep't of Health & Hum. Servs.*, 155 F.4th 1099, 1104 (9th Cir. 2025) (statement of Fletcher & Koh, JJ., denial of rehearing

en banc) (source of rights is dispositive under *Megapulse*). As the District Court in *Thakur v. Trump* explained, the source of the right for a First Amendment claim is the U.S. Constitution. *See* 787 F. Supp. 3d 955, 990 (N.D. Cal. 2025), *aff'd in part, rev'd in part and remanded*, 176 F.4th 1187 (9th Cir. 2026).[3] *Accord AAUP*, 2025 WL 3187762, at *21; *Am. Bar Ass'n v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 243–45 (D.D.C. 2025). Plaintiffs' claims do not depend on or seek redress for the violation of any contractual right.[4] Defendants cite, Opp. at 18, *Tucson Airport Auth. v. Gen. Dynamics Corp.*, but that case is distinct because there the plaintiff alleged that a breach of contract terms was unconstitutional. *See* 136 F.3d 641, 647 (9th Cir. 1998); *see also Wright,* 2026 WL 1915590, at *10.

And, even if the first prong were not dispositive, the relief sought also supports jurisdiction. Plaintiffs do not seek performance or modification of any contract terms, damages, or any court order compelling NIH to pay them money. *See Pacito v. Trump*, 169 F.4th 895, 929 (9th Cir. 2026). Rather, Plaintiffs seek an injunction restraining government officials from perpetuating constitutional violations, which federal district courts have had the power to issue since the founding and which the Court of Federal Claims lacks. *See Cmty. Legal Servs. in E. Palo Alto*, 155 F.4th at 1105 (even if carrying out a contract is the only practical way for the government to comply with the law, that does not show that plaintiffs are seeking remedies that arise from a contract).

Where, as here, "rights and remedies are statutorily or constitutionally based, . . . district courts have jurisdiction." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 938 (9th Cir. 2025).

---

[3] Defendants did not challenge this holding on appeal, and the Ninth Circuit reviewed those First Amendment claims without concern as to jurisdiction, despite finding that termination APA claims belonged in the Court of Federal Claims. *Thakur*, 176 F.4th at 1198–1204.

[4] Indeed, the NIH grants in question *are not contracts* in the first place. "[F]ederal grant agreements [are treated] as contracts when the standard conditions for a contract are satisfied." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021). Along with other elements also not present here, a contract requires "actual authority to bind the government in contract . . . in unambiguous terms." *Pennsylvania Dep't of Pub. Welfare v. United States*, 48 Fed. Cl. 785, 788 (2001). The relevant authorizing statutes do not grant NIH authority to bind the government; they simply authorize NIH to make grants-in-aid "for the general support of . . . research[.]" *See* 42 U.S.C. § 241(a)(3); *see also* 42 U.S.C. § 284(b)(2)(B). Congress separately addressed NIH's authority to "enter into contracts" for other purposes. *See* 42 U.S.C. § 241(a)(7); *see also* 42 U.S.C. § 284(b)(2)(A).

**2. The Court Has Jurisdiction Over the Relevant APA Claims.**

The Tucker Act also does not deprive this Court of jurisdiction over the APA claims in the Motion, which solely concern the Challenged Policies. In part, these claims concern future awards and current or future applications, meaning that no grant agreement is yet in place, so the claims are not even arguably founded "upon any express or implied contract with the United States." *See* 28 U.S.C. § 1491(a)(1); *Metro. Gov't of Nashville & Davidson Cnty. v. U.S. Dep't of Homeland Sec.*, No. CV 26-02886 (AHA), 2026 WL 2905123, at *4 (D.D.C. Sept. 28, 2026).

Moreover, even as to the impact of the Challenged Policies on existing grants, Justice Barrett's controlling concurrence in *NIH* establishes that the mere fact that the challenged "agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the CFC can hear." *See NIH*, 145 S. Ct. at 2661–63 (Barrett, J., concurring). Rather, prospective relief against implementation or enforcement of a challenged policy "falls well within the scope of the District Court's jurisdiction under the Administrative Procedure Act." *Id.* at 2663 (Roberts, C.J., concurring in part and dissenting in part); *see also Washington v. U.S. Dep't of Educ.*, 161 F.4th 1136, 1140 (9th Cir. 2025) (APA prospective relief available under *NIH* and *California*); *Cmty. Legal Servs. in E. Palo Alto*, 155 F.4th at 1106. That the Supreme Court did not parse the different forms of relief at issue when granting the government's stay request in *California*, Opp. at 20, cannot bear the weight Defendants would give to it, in light of the clear distinction subsequently drawn by Justice Barrett in denying a stay request for policy-related, prospective relief. *See NIH*, 145 S. Ct. at 2662–63.

**B. Plaintiffs Have Standing.**

Defendants' standing argument is easily dispensed with. Defendants concede that six Plaintiffs with grant terminations or denials have concrete injuries, but argue other Plaintiffs' injuries are "less concrete." Opp. at 22. More fundamentally, they insist that all Plaintiffs seek "relief . . . premised on nonparty rights to contracts" without privity or third-party beneficiary status and thus are suffering no injury to a legally protected interest. *Id.* at 22–25. Both contentions are clearly wrong.

First, while only one plaintiff with standing per claim is needed, *Kaahumanu v. Hawaii*, 682 F.3d 789, 798 (9th Cir. 2012), *all* Plaintiffs have alleged sufficiently concrete injuries-in-fact. Every Plaintiff

without a terminated grant (and most with) is chilled in their research-related speech or is being forced to parrot the NIH's messages because of the Challenged Policies.[5] This is a concrete injury. *See AAUP*, 815 F. Supp. 3d at 950; *Finley v. Nat'l Endowment for the Arts*, 795 F. Supp. 1457, 1469 (C.D. Cal. 1992).

And far from simply "cho[osing] not to apply" for NIH grants, Opp. at 23, Plaintiffs have lost the ability to fairly compete for funding.[6] "[A]llegations of injury resulting from lost opportunities to compete for economic benefits are sufficient for standing purposes." *Int'l Longshoremen's & Warehousemen's Union v. Meese*, 891 F.2d 1374, 1379 (9th Cir. 1989), *citing Ass'n of Data Processing Serv. Org. v. Camp*, 397 U.S. 150 (1970); *Am. Ass'n of Physicians for Hum. Rts. v. Nat'l Insts. of Health*, 795 F. Supp. 3d 678, 693 (D. Md. 2025) (finding injury in fact based in part on "the inability to apply for new Grants, related to LGBTQI+ health"). The time Plaintiffs have been forced to expend on reframing their work to conform to NIH's ideological demands also suffices.[7] *See Sherley v. Sebelius*, 776 F. Supp. 2d 1, 12 (D.D.C. 2011), *aff'd*, 689 F.3d 776 (D.C. Cir. 2012). Characterizing these harms as "speculative or attenuated" because Plaintiffs are researchers instead of institutional grantees "is divorced from the reality of how federal research grants function." *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 110–11 (D. Mass. 2025).

Given that Plaintiffs' "'personal stake' in their claims is easy to see," *see Thakur*, 787 F. Supp. 3d at 992, whether they are "directly a signatory to a federal government contract is immaterial." *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 146 (D.D.C. 2025). As in *Thakur*, Plaintiffs are not seeking to enforce their university's contract rights; they advance their *own* rights, and

---

[5] Salles Decl. ECF 34 ¶¶ 19–22; Hatcher Decl. ECF 35 ¶¶ 12–13, 16–17, 22–23; Rosso Decl. ECF 36 ¶¶ 34, 36; Cohen Decl. ECF 37 ¶¶ 18, 27; Albarracín Decl. ECF 38 ¶¶ 16–17, 22–24; Moseson Decl. ECF 39 ¶¶ 23–24, 40–41; Pagkas-Bather Decl. ECF 40 ¶¶ 19, 21–22; Edwards Decl. ECF 42 ¶¶ 15, 17–18; Minor Decl. ECF 43 ¶¶ 22–23; Green Decl. ECF 44 ¶¶ 12–14, 17, 20; Jackson Decl. ECF 45 ¶ 18; Bell Decl. ECF 46 ¶¶ 17–19, 21, 28–29, 31–33; Smith Decl. ECF 80 ¶¶ 9–10, 12–15, 20–21.

[6] Salles Decl. ECF 34 ¶¶ 19–22; Hatcher Decl. ECF 35 ¶¶ 18–20, 24–25, 29–30; Albarracín Decl. ECF 38 ¶¶ 27–29; Moseson Decl. ECF 39 ¶ 42; Daw Decl. ECF 41 ¶ 22; Edwards Decl. ECF 42 ¶¶ 19–24; Green Decl. ECF 44 ¶ 19; Jackson Decl. ECF 45 ¶¶ 23–26, 28, 32; Smith Decl. ECF 80 ¶ 17.

[7] Cohen Decl. ECF 37 ¶ 18; Albarracín Decl. ECF 38 ¶¶ 16–17; Moseson Decl. ECF 39 ¶¶ 23–24, 36; Edwards Decl. ECF 42 ¶ 17; Minor Decl. ECF 43 ¶ 23; Green Decl. ECF 44 ¶¶ 13, 17; Bell Decl. ECF 46 ¶¶ 20, 32.

"Plaintiffs are exactly the individuals whom the First Amendment and the APA aim to protect. They are the ones who engaged in the protected speech, and their research is the target. . . ." *Thakur*, 787 F. Supp. 3d at 994.

Because Plaintiffs do not seek to enforce a contract, the question of their nonparty interest in the grants is irrelevant. *Id.* at 993 (relying on *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 679 (9th Cir. 2007) and *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 422 (1942)). "[T]raditional Article III standing rules do not change simply because the alleged harm occurred through the termination of a contract with a third party." *Id.*

**II. Plaintiffs Are Likely to Succeed on Their First Amendment Claims.**

Defendants' minimal arguments on the merits fare no better. As Plaintiffs set forth in their Motion, the Challenged Policies and Terminations violate the First Amendment because they discriminate based on viewpoint, are unreasonable, and compel speech, and the Terminations additionally constitute retaliation. Defendants barely dispute any of this. Most glaringly, they offer no response to Plaintiffs' retaliation claim at all.

With respect to Plaintiffs' viewpoint discrimination claims, Defendants do not dispute that they discriminate based on viewpoint. Instead, they argue that the First Amendment permits NIH to "terminate grants based on . . . viewpoint" because they are merely sponsoring, not regulating, speech. Opp. at 34.[8] As Defendants recognize, however, the Ninth Circuit has already rejected that argument. In *Thakur*, the Ninth Circuit correctly held that "Supreme Court precedent defeats" Defendants' contention, because it would be irreconcilable with *NEA v. Finley*, 524 U.S. 569, 587 (1998), which held that "even in the provision of subsidies, the Government may not aim at the suppression of dangerous ideas," with *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 834 (1995), which "reaffirmed the requirement of viewpoint neutrality in the Government's provision of financial benefits," and with *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 542, 548–49 (2001), which held that "Congress' antecedent

[8] Defendants state, in one line, without elaboration or support, that "the speech at issue here is not Plaintiffs' speech." *See* Opp. at 25. As Plaintiffs set forth in the Motion, that is incorrect on the law. Mot. at 21–23. And it is too undeveloped to warrant consideration. *See, e.g.*, *McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1081 (9th Cir. 2003) ("declin[ing]" to consider "undeveloped" argument); *Caccuri v. Sony Interactive Ent. LLC*, 735 F. Supp. 3d 1139, 1151 (N.D. Cal. 2024) (refusing to consider "undeveloped argument" that offers "no analysis or authority").

funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest." *See Thakur*, 176 F.4th at 1204.[9] Thus, Plaintiffs are likely to succeed on their viewpoint discrimination claims.[10]

Defendants also fail to respond to Plaintiffs' argument that the Challenged Policies and Terminations are unreasonable in light of the purposes of NIH funding. In a footnote aimed not at rebutting this argument but at sweeping *Rosenberger* aside, Defendants claim that Plaintiffs have not "show[n]" that NIH funding creates a forum. *See* Opp. at 37. This ignores Plaintiffs' explanation of why forum doctrine offers an alternative lens for evaluating this case. *See* Mot. at 21. And it offers no response to Plaintiffs' arguments that the Challenged Policies and Terminations are unreasonable. *See id.* at 28–29.

As for Plaintiffs' compelled speech claims, Defendants appear to rely on the same justification rejected in *Thakur*—that, in its view, only conditions that reach Plaintiffs' speech on their "own time and dime" warrant First Amendment scrutiny.[11] *See* Opp. at 36 (citation omitted). This fails for two reasons. First, as noted above, government funding is not a First-Amendment-free zone. The Ninth Circuit has already held that the government cannot discriminate against views within funding for private speech. *See Thakur*, 176 F.4th at 1204. Equally, it cannot compel speech within the scope of the program. *See Book People, Inc. v. Wong*, 91 F.4th 318, 324, 338–39 (5th Cir. 2024) (holding that requiring booksellers to rate books and offer those ratings to government to publish online, all within government program of selling books to state schools, violates the First Amendment). Second, while conceding that the government cannot "leverage funding to regulate speech *outside* the contours of the

---

[9] The government has filed a *cert* petition in *Thakur*, which remains pending.

[10] Defendants do dispute Plaintiffs' argument that Defendants screen for researchers' views. But the facts show that Defendants consider *both* the proposed project and the involved researchers to screen out disfavored views. *See* Mot. at 24 n.5 (detailing evidence that Defendants look for "DEI language" in researchers' biosketches, framing, and justification, even in projects that Defendants agree are not focused on DEI). Even if the Court disagrees, Plaintiffs should win on the viewpoint discrimination claims because, however they approach the views of researchers, Defendants do not contest that they target projects based on perceived viewpoint. *See* Opp. at 27.

[11] Defendants also assert, without elaboration or support, that the Challenged Policies and Terminations do not "pertain to . . . compulsion of [speech]." *See* Opp. at 34. This contention, too, is so underdeveloped as to be deemed abandoned and unworthy of consideration. *See supra* note 8.

program[]," Opp. at 35 (citation omitted), Defendants fail to rebut Plaintiffs' showing that this is part of what is going on here. *See* Mot. at 31 (detailing NIH's compulsion of speech outside of NIH-funded work). For both reasons, Plaintiffs are likely to succeed on the merits of their compelled speech claims.

### III. Plaintiffs Are Likely to Succeed on Their APA Claims.

#### A. The Challenged Policies Are Final Agency Actions.

Plaintiffs are also likely to succeed on their APA claims. Defendants first argue that Plaintiffs do not challenge final agency action, vaguely asserting that the Court lacks jurisdiction to review a "broad programmatic attack" or "exercise authority over speculative future terminations," and confusingly hinging their argument on the President's authority to set policy priorities. *See* Opp. at 25–27. But to the extent Plaintiffs seek to enjoin "speculative future terminations," it is only insofar as those terminations would be implementing the Challenged Policies. And Plaintiffs do not challenge the President's authority to set policy at all. Rather, Plaintiffs challenge a specific set of *agency* directives that "mark the 'consummation' of [Defendants'] decisionmaking process." *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation modified); *see also* Mot. at 19 (defining "Challenged Policies"); *id.* at 33 (describing implementation). Some of these NIH policies have already been held to constitute final agency action. *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 791 F. Supp. 3d 119, 175 (D. Mass. 2025). And under Ninth Circuit law, specific agency policies that reflect agency decisionmaking and have been implemented constitute final agency action. *See New York v. U.S. Dep't of Energy*, No. 6:25-cv-01458-MTK, 2025 WL 3140578, at *9 (D. Or. Nov. 10, 2025), *appeal dismissed*, No. 26-214, 2026 WL 1049169 (9th Cir. Apr. 13, 2026); *see also Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1206 (S.D. Cal. 2019) ("[Even a]n unwritten policy can still satisfy the APA's pragmatic final agency action requirement.") (collecting cases).

#### B. The Challenged Policies Are Not Committed to Agency Discretion.

Nor are Plaintiffs' APA claims barred by agency discretion. *See* Opp. at 27–28. The Supreme Court has read 5 U.S.C. § 701(a)(2) "quite narrowly, restricting it to those rare circumstances" in which "a court would have no meaningful standard" to apply. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). And while Defendants are correct that *Lincoln v. Vigil* held that "allocation of funds from a lump-sum appropriation is [a type of]

administrative decision traditionally regarded as committed to agency discretion," that rule only applies "absent some statutory constraint on the agency's discretion." *See Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013) (citation modified); *Lincoln*, 508 U.S. at 192–93; *see also Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 100 (D.C. Cir. 2021).

Defendants fail to explain how a policy to pursue terminations under 2 C.F.R. § 200.340(a)(4) for new agency priorities (Claim Six) or to usurp IC Directors' decision-making authority (Claim Five) could be committed to agency discretion when Plaintiffs' arguments are that the agency's actions *violate* relevant statutes and regulations. *Cf. Washington*, 161 F.4th at 1140–41 (agency regulations regarding provision of continuation funds supplies law to apply).

And even for Plaintiffs' arbitrary and capricious claim (Claim Four), Congress has cabined NIH discretion, including by requiring NIH to prioritize "minority health disparities research," "improve research related to the health of sexual and gender minority populations," and pay "special consideration to biological, social, and other determinants of health that contribute to health disparities." *See* 42 U.S.C. §§ 285t(b), 283p, 282(b)(8)(D)(ii). These mandates provide a meaningful standard against which the Court can judge NIH's categorical decision to defund research that includes the terms "minority," "health inequity," and "gender." *See* ECF 80-2 at 12–16; *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 53 (1st Cir. 2025); *see also S.F. Unified Sch. Dist. v. AmeriCorps*, 784 F. Supp. 3d 1280, 1288 (N.D. Cal. 2025) (statutory diversity objectives provide law against which to measure agency's anti-DEI grant conditions).

As *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751–52 (D.C. Cir. 2002), involved a statute in which Congress placed no restraint on the agency's discretion, it too does not aid Defendants. Because this is not a case in which there is "no law to apply," *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (citation modified), Defendants' actions are subject to judicial review.

### C. Defendants Have Waived Any Defense to the Merits of Plaintiffs' Arbitrary and Capricious Claim.

Defendants' entire argument on the merits of Plaintiffs' arbitrary and capricious claim erroneously focuses on whether "the challenged terminations survive" such review. *See* Opp. at 32. But

Plaintiffs' Motion does not seek arbitrary and capricious review of any termination.[12] *See* Mot. at 34–36. Defendants have thus forfeited any argument that the Policies, which Plaintiffs *do* challenge, are not arbitrary and capricious. *See, e.g.*, *Mobley v. Workday, Inc.*, 740 F. Supp. 3d 796, 811 n.4 (N.D. Cal. 2024) (rejecting an argument first raised at a hearing because the "argument was not discussed in the briefing and has been waived").

**D. The Challenged Policies are Contrary to Law.**

In response to Plaintiffs' contrary-to-law challenge to NIH's policy usurping the IC Directors' role as final decision maker, Defendants contend that 42 U.S.C. § 284 grants the HHS Secretary ultimate authority over grants, and that he can delegate it to the NIH Director. *See* Opp. at 28–29. Defendants are incorrect as a matter of law. And, even if they were right, their argument still would not suffice to authorize the policy at issue here, which grants this authority to OER and HHS officials, *see* Mot. at 18, *not* to the HHS Secretary or NIH Director.

First, Defendants are incorrect that Congress granted final grantmaking authority to "the Secretary, acting through the [IC] Director[s]," rather than the IC Directors themselves. *See* Opp. at 28–29.[13] As Defendants concede, 42 U.S.C. § 284(b)(3) specifies that it is IC Directors—*not* the Secretary acting through them—who "shall" make final decisions about research grants. *See* Opp. at 29 n.3 (conceding IC Directors "have this role for R-series grants"). Section 284(b)(2) and (b)(2)(B), which states that "the Secretary, acting through the [IC] Director[s] . . . may make grants," is separate from, and does not modify § 284(b)(3)'s explicit language.

And even if § 284(b)(2) were read to give the Secretary *and* IC Directors final grantmaking authority over non-R-series grants, it still could not authorize the Secretary to delegate that power to any

[12] Plaintiffs do allege that NIH's termination of grants is arbitrary and capricious under the APA, but that claim is brought for preservation purposes only, *see* Am. Compl. ¶¶ 256–61, and Plaintiffs do not move on the claim in their Motion. Defendants' argument appears to be a vestige of Government briefing in another case, rather than a response to Plaintiffs' Motion. *Compare Thakur v. Trump*, 3:25-cv-04737-RFL, ECF 35 at 46–48 (N.D. Cal. June 12, 2025) *with* Opp. at 32–34.

[13] While Defendants cite 42 U.S.C. § 284(b)(1) to make their argument, it does not mention grants. They likely intended to rely on language that appears in 42 U.S.C. §§ 284(b)(2) and (b)(3), so Plaintiffs address that language. Defendants are also wrong to rely on 42 U.S.C. § 284(a)(1) to argue that the Secretary can "act[] through" the NIH Director; that section governs IC Director appointments, not grants.

other staff. Defendants point, Opp. at 29, to *Miller v. Lehman*, 801 F.2d 492 (D.C. Cir. 1986), which construes language in 10 U.S.C. § 1552(a)(1) granting *other* Secretaries *different* authority "act[ing] through" civilian boards as giving those Secretaries the authority to override the civilian board,[14] but neither that case nor any other case construing 10 U.S.C. § 1552(a)(1) suggests that Secretaries may delegate authority to anyone Congress has not expressly directed them to act through. *See, e.g.*, *Lewis v. Sec'y of Navy*, 195 F. Supp. 3d 277, 286 (D.D.C. 2016) (holding that "acting through" language "directs the Secretary to act through the Board itself" and agency "contravenes [that] statutory authority" when it directs Board's Executive Director to act solo); *Lipsman v. Sec'y of Army*, 335 F. Supp. 2d 48, 54 (D.D.C. 2004) ("the Secretary was bound to act through [the board], not its staff members").

Defendants cite *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), Opp. at 29, which considers the President's authority to remove officers pursuant to the Constitution. It cannot answer the question of when a Secretary has decision-making or delegation authority pursuant to a specific statute. Holding otherwise would eviscerate Congress' authority to define roles for any employee of any agency.

Defendants also make no argument that justifies supplementing the factors Congress identified for IC Directors to consider when reviewing applications. *See* 42 U.S.C. § 284(b)(3), (b)(3)(B) (stating what the IC Director "shall" "take into consideration"). They argue, without pointing to any statutory text, that this list is non-exhaustive. *See* Opp. at 29–30. But Congress knew how to tell NIH officials a list was not exhaustive, *see, e.g.*, 42 U.S.C. § 284(b)(1)(M), and chose not to do so here. *See Pereida v. Wilkinson*, 592 U.S. 224, 232 (2021). Defendants also suggest that accepting Plaintiffs' argument would prevent them from considering things like "scientific merit" and "practical utility," Opp. at 30, but those considerations are built into 42 U.S.C. § 284(b)(3)(B), which includes as relevant factors the IC's mission, scientific priorities, and already-funded work on similar topics. In any event, even if the Act were ambiguous on this point, it is unlikely that Congress intended for government officials to be able to consider factors completely unrelated to scientific priorities and needs. *Cf. Oracle Int'l Corp. v. Rimini*

[14] The D.C. Circuit's holding that 10 U.S.C. § 1552(a) "leaves no doubt that the final decision is to be made by [the military Secretary]," 801 F.2d at 497, is inapplicable here. That holding turns not on the "acting through" language, but on § 1552(a)'s grant of authority to the Secretary to make corrections "*when he considers it necessary*[.]" *See id.* (quoting 10 U.S.C. § 1552(a)). There is no comparable language in 42 U.S.C. § 284(b)(2).

*St., Inc.*, 123 F.4th 986, 994 (9th Cir. 2024) (under the canon of *noscitur a sociis,* courts define a term by "the company it keeps" (citation modified)).

**E. The Challenged Policies Violate Regulations.**

Defendants' response to Plaintiffs' contrary to regulations claim (Claim 6), Opp. at 30–32, fails as well. Since October of 2025, NIH may terminate a grant if it "no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). But as explained in Plaintiffs' Motion, this does not allow terminations based on agency priorities developed *after* a grant is awarded. Mot. at 37–38. Defendants proffer different interpretations of "the" and "no longer," Opp. at 30, but never grapple with the meaning of the clause as a whole. The phrase "no longer effectuates" limits the clause to awards that previously effectuated program goals or priorities but now do not. The term "the" specifies that the agency must consider a *specific* set of program goals and agency priorities, *see Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1246 (9th Cir. 2012) (describing "the" as a word of particularity and limitation), which cannot refer to priorities not yet devised. It is the *combination* of "no longer" and the definite article "the" that makes it clear that the only priorities an agency may invoke to terminate a grant are the ones that existed when the original award was made.

Defendants' reliance on 2 C.F.R. § 200.340(a)(3), providing that when a grant recipient partially terminates an award the agency can terminate the remainder if it "will not accomplish the purposes for which the Federal award was made," Opp. at 31–32, is also unavailing. Defendants argue that if subsection (a)(4) were meant to be backward-looking, it would mirror (a)(3)'s language and employ the past tense. *Id*. But this ignores that the "no longer effectuates the . . . agency priorities" language in subsection (a)(4) is itself backward-looking. In fact, the backward-looking nature of subsection (a)(3) reinforces the backward-looking nature of subsection (a)(4). *See Beecham v. United States*, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well."). Moreover, Defendants fail to address Plaintiffs' arguments that Defendants' interpretation of (a)(4) would render (a)(3) "superfluous." *See* Mot. at 37–38 (quoting *New Jersey v. OMB*, 837 F. Supp. 3d 258, 277 (D. Mass. 2026)).

Finally, Defendants wholly ignore *New Jersey*'s holding rejecting an interpretation of (a)(4) to allow terminations for new agency priorities, *see* Mot. at 38, based on both the "[t]he broader regulatory

scheme"—which requires programs to be designed with "clear goals and objectives," "measure performance based on the goals and objectives developed," and provide applicants notice of the specific program goals and agency priorities on which their performance will be measured if an award is made—and the rulemaking history, which reflects that OMB did not contemplate an award could be terminated where program goals or agency priorities changed but rather where "new information establishes that the original goals can no longer be met, either because the specific project cannot achieve those goals or because they are unachievable." *New Jersey*, 837 F. Supp. at 279–81 (citing various provisions in 2 C.F.R. Pt. 200).

**IV. Plaintiffs Have Established Irreparable Harm.**

The other preliminary injunction factors also support Plaintiffs' Motion. Defendants fail to counter Plaintiffs' showing of irreparable injury. Most strikingly, while Defendants argue that Plaintiffs' declarations do not establish some undefined "magnitude of harms," Opp. at 38, "[t]he Government overlooks that the 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Thakur*, 176 F.4th at 1205 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Defendants largely ignore this foundational rule except for a "but see" citation to *Thakur*, *see* Opp. at 37, but it is well established, and not limited to *Thakur*. "Irreparable harm is relatively easy to establish in a First Amendment case. . . . The plaintiff need only demonstrate the existence of a colorable First Amendment claim." *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (citation modified); *see also Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014); *Imperial Sovereign Ct. of Mont. v. Knudsen*, 170 F.4th 820, 876 (9th Cir. 2026). Defendants also contend that Plaintiffs have merely "cho[sen] not to research Government-prioritized subject matter areas," Opp. at 38, but this case is not about unrestrained choice; it is about coercion and injury caused by unconstitutional policies and retaliatory grant terminations.

Next, Defendants mischaracterize Plaintiffs' injuries and requested relief as monetary, citing inapposite case law on the unavailability of obtaining money damages through injunctions. *See* Opp. at 37–38. But, as explained above, Plaintiffs do not seek damages. *See supra* Section I.A.1. And Defendants' argument fails to "grapple with . . . Plaintiffs' non-monetary irreparable harms," *Thakur*, 176 F.4th at 1205, including disrupted research, destabilized staffing, and weakened career prospects.

*See* Mot. at 39–40. These are all non-monetary harms that cannot be repaired. Nor are Plaintiffs' injuries "speculative and attenuated." *See* Opp. at 37. Plaintiffs have shown that the harms have already happened, are ongoing, and are the direct result of Defendants' policies. *See supra* Section I.B. Finally, Defendants argue that Plaintiffs must show "irreparable harm to themselves," not others. Opp. at 37–38. Each Plaintiff has done that. *See* Mot. at 39–40.

**V. The Equities and Public Interest Support Injunctive Relief.**

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (citation modified). Simply put, "there is no harm to the Government when a court prevents the Government from engaging in unlawful practices." *Doe v. Trump*, 784 F. Supp. 3d 1297, 1313 (N.D. Cal. 2025) (citation modified). Defendants' invocation of the President's policy priorities, Opp. at 39, supplies no legitimate interest in continuing to violate the Constitution or federal law. Nor can Defendants' speculation about unrecoverable payments, *see id.*, overcome Plaintiffs' ongoing constitutional injuries and irreversible losses, *see Thakur*, 176 F.4th at 1205–06, much less the concrete public-health consequences of (among many others) lost findings from years of Alzheimer's research and diminished opportunities to develop effective violence-prevention strategies or understand the health impacts of climate change. *See* Mot. at 41. Preserving that work protects the public's investment in research. And, while Defendants invoke *California*, Opp. at 39, to support their supposed fiscal concerns, the Court's assessment of the equities there rested on grant recipients' ability "to keep their programs running" as the case proceeded. *California*, 604 U.S. at 652. The record shows the opposite is true here. *See* Mot. at 39–40.

**CONCLUSION**

For the reasons stated herein and in Plaintiffs' Motion, the Court should grant Plaintiffs' request for a preliminary injunction, stay the Challenged Policies, and waive bond.

Dated: October 26, 2026

Respectfully submitted,

/s/ Rachel Meeropol____________

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
RACHEL MEEROPOL (NY Bar No. 4100954)
(Appearance *Pro Hac Vice*)
rmeeropol@aclu.org
OLGA AKSELROD (NY Bar No. 4132825)
(Appearance *Pro Hac Vice*)
oakselrod@aclu.org
VERA EIDELMAN (CA Bar No. 308535)
veidelman@aclu.org
ALEXIS AGATHOCLEOUS (NY Bar No. 4227062)
(Appearance *Pro Hac Vice*)
aagathocleous@aclu.org
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2659

*Attorneys for Plaintiffs*