**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
OLGA AKSELROD (NY Bar No. 4132825) (Appearance *Pro Hac Vice*)
oakselrod@aclu.org
VERA EIDELMAN (CA Bar No. 308535)
veidelman@aclu.org
RACHEL MEEROPOL (NY Bar No. 4100954) (Appearance *Pro Hac Vice*)
rmeeropol@aclu.org
ALEXIS AGATHOCLEOUS (NY Bar No. 4227062) (Appearance *Pro Hac Vice*)
aagathocleous@aclu.org
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2659

*Attorneys for Plaintiffs*

*(Additional Counsel on Following Page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ARGHAVAN SALLES; ABIGAIL HATCHER; ANDREA ROSSO; ANN D. COHEN-WILSON; DOLORES ALBARRACÍN; HEIDI MOSESON; JADE PAGKAS-BATHER; JONATHAN KYLE DAW; KATIE EDWARDS; KELTON MINOR; MICHAEL D. GREEN; SARA JACKSON; SUZANNE BELL; and MIKAELA SMITH, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

NATIONAL INSTITUTES OF HEALTH; JAY BHATTACHARYA, *in his official capacity as Director of the National Institutes of Health*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., *in his official capacity as Secretary of the United States Department of Health and Human Services*; and UNITED STATES DOGE SERVICE,

Defendants.

Case No. 3:26-cv-10510-VC

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION**

Judge: Hon. Vince Chhabria
Date: November 18, 2026
Time: 2:00 PM
Courtroom: 3 – 17th Floor

*(Additional Counsel on Behalf of Plaintiffs)*


**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA**
GRAYCE ZELPHIN (CA Bar No. 279112)
gzelphin@aclunc.org
CHESSIE THACHER (CA Bar No. 296767)
cthacher@aclunc.org
NEIL K. SAWHNEY (CA Bar No. 300130)
nsawhney@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

**PROTECT DEMOCRACY PROJECT**
SHALINI AGARWAL (DC Bar No. 990963) (Appearance *Pro Hac Vice*)
shalini.agarwal@protectdemocracy.org
2020 Pennsylvania Avenue, NW, Suite 163
Washington, DC 20006
KENNETH PARRENO (TX Bar No. 24130477) (Appearance *Pro Hac Vice*)
kenneth.parreno@protectdemocracy.org
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
LISA S. MANKOFSKY (DC Bar No. 411931) (Appearance *Pro Hac Vice*)
lmankofsky@cspi.org
OSCAR HEANUE (DC Bar No. 90036939) (Appearance *Pro Hac Vice*)
oheanue@cspi.org
1250 I Street, NW, Suite 500
Washington, DC 20005
Telephone: (202) 777-8381

**JACOBSON LAWYERS GROUP**
DANIEL F. JACOBSON (DC Bar No. 1016621) (Appearance *Pro Hac Vice*)
dan@jacobsonlawyersgroup.com
LYNN D. EISENBERG (DC Bar No. 1017511) (Appearance *Pro Hac Vice*)
lynn@jacobsonlawyersgroup.com
STEPHEN K. WIRTH (DC Bar No. 1034038) (Appearance *Pro Hac Vice*)
stephen@jacobsonlawyersgroup.com
5100 Wisconsin Avenue, NW, Suite 301
Washington, DC 20016
Telephone: (301) 823-1148

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .... 4
INTRODUCTION .... 7
ARGUMENT .... 8
I. Plaintiffs have Article III standing. .... 8
A. Plaintiffs have established multiple concrete injuries in fact. .... 8
B. Neither Article III nor Rule 23 require inclusion of the institutional grantees. .... 10
II. The Policy Class definition is sufficiently definite. .... 12
III. Plaintiffs satisfy Rule 23's requirements. .... 14
A. Typicality. .... 14
B. Commonality .... 15
C. Availability of class-wide relief under Rule 23(b)(2). .... 17
CONCLUSION .... 17

## TABLE OF AUTHORITIES

**Cases** ........ **Page(s)**


*Am. Ass'n of Physicians for Hum. Rts., Inc. v. Nat'l Insts. of Health*, 795 F. Supp. 3d 678 (D. Md. 2025) ........ 9

*Am. Ass'n of Univ. Professors v. Trump,* 815 F. Supp. 3d 907 (N.D. Cal. 2025) ........ 9, 11

*Am. Council of Learned Societies v. Nat'l Endowment for the Humans.*, 25-CV-3657, 2026 WL 1256545 (S.D.N.Y. May 7, 2026) ........ 8, 11

*Am. Encore v. Fontes*, 152 F.4th 1097 (9th Cir. 2025) ........ 9

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........ 14, 15

*Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117 (E.D.N.Y. 2020) ........ 16

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ........ 12

*Brown v. Kelly*, 244 F.R.D. 222 (S.D.N.Y. 2007) ........ 15

*Conant v. McCaffrey*, 172 F.R.D. 681 (N.D. Cal. 1997) ........ 12

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........ 9

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ........ 15

*Garro Pinchi v. Noem*, 813 F. Supp. 3d 973 (N.D. Cal. 2025) ........ 8, 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........ 14

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ........ 14

*Healthy Futures of Texas v. Dep't of Health & Hum. Servs.*, 326 F.R.D. 1 (D.D.C. 2018) ........ 16

*Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026) ........ 12

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
21 F.4th 1102 (9th Cir. 2021) .......... 12

*In re Tesla Advanced Driver Assistance Sys. Litig.*,
350 F.R.D. 119 (N.D. Cal. 2025) .......... 12

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......... 12

*Int'l Longshoremen's & Warehousemen's Union v. Meese*,
891 F.2d 1374 (9th Cir. 1989) .......... 9

*Kidd v. Mayorkas*,
343 F.R.D. 428 (C.D. Cal. 2023) .......... 15

*Kingdom v. Trump*,
No. 1:25-CV-691-RCL, 2025 WL 1568238 (D.D.C. June 3, 2025) .......... 8

*Mobley v. Workday, Inc.*,
740 F. Supp. 3d 796 (N.D. Cal. 2024) .......... 12

*Nat'l Ass'n for Advancement of Colored People v. United States*,
No. 8:25-CV-00965-JRR, 2026 WL 1265450 (D. Md. May 8, 2026) .......... 11

*Nat'l TPS All. v. Noem*,
830 F. Supp. 3d 939 (N.D. Cal. 2025) .......... 12, 17

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.*,
477 F.3d 668 (9th Cir. 2007) .......... 11

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .......... 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......... 14

*Pablo Sequen v. Albarran*,
810 F. Supp. 3d 1084 (N.D. Cal. 2025) .......... 8, 16

*Padilla v. U.S. Immigr. & Customs Enf't*,
354 F. Supp. 3d 1218 (W.D. Wash. 2018) .......... 16

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 14, 15, 16

*Perkins Coie LLP v. U.S. Dep't of Just.*,
783 F. Supp. 3d 105 (D.D.C. 2025) .......... 8, 11

*President & Fellows of Harvard Coll. v. U. S. Dep't of Health & Hum. Servs.*,
798 F. Supp. 3d 77 (D. Mass. 2025) .......... 10

*Probe v. State Teachers' Ret. Sys.*,
780 F.2d 776 (9th Cir. 1986) ........ 13

*Rosas v. Baca*,
No. CV 12-00428 DDP (SHX), 2012 WL 2061694 (C.D. Cal. June 7, 2012) ........ 15

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017) ........ 17

*Sardarian v. Fed. Emergency Mgmt. Agency*,
No. 3:19-CV-00910 (OAW), 2022 WL 4080325 (D. Conn. Apr. 1, 2022) ........ 10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 8

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........ 9

*Thakur v. Trump*,
787 F. Supp. 3d 955 (N.D. Cal. 2025) ........ *passim*

Thakur v. Trump,
176 F.4th 1187 (9th Cir. 2026) ........ 7, 10, 13

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) ........ 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 16, 17

**Statutes** ........ **Page(s)**

5 U.S.C. § 706(1) ........ 16

**Rules** ........ **Page(s)**

Fed. R. Civ. P. 23(a) ........ 14, 15, 17

Fed. R. Civ. P. 23(b)(2) ........ 17

Fed. R. Civ. P. 23(c)(1)(C) ........ 14

**INTRODUCTION**

Plaintiffs seek certification of two classes for the purpose of obtaining the class-wide preliminary relief sought in their Motion for Stay and Preliminary Injunction: a preliminary injunction against the unconstitutional Challenged Policies and Terminations, and a stay of the unlawful Challenged Policies under section 705 of the Administrative Procedure Act ("APA").

Like their opposition to Plaintiffs' motion for preliminary injunction, Defendants' opposition to class certification (ECF 85, "Opp.") rests on an invalid premise: that Plaintiffs' challenge to unconstitutional and unlawful agency-wide policies is somehow a "contract" action. But Plaintiffs do not seek to enforce any specific contract or its terms. Instead, Plaintiffs contend that the Challenged Policies and Terminations violate the First Amendment's prohibitions on viewpoint discrimination, unreasonable restrictions on government funding for private speech, and compelled speech; that the Terminations additionally violate prohibitions on retaliation; and that the Challenged Policies violate the APA's requirements that agencies act within their constitutional, statutory, and regulatory mandates and provide reasoned explanations for their actions. Nothing about those claims—which advance *Plaintiffs'* rights under the Constitution and APA—require the inclusion of any institutional grantees which may be parties to the grant agreements with the NIH.

Once their mistaken premise is set aside, Defendants' arguments against class certification collapse. Plaintiffs have standing because they seek to remedy the serious injuries that *they*, not the institutional grantees, have suffered due to the Challenged Policies and Terminations: lost grant funding, impaired ability to compete for future funding, forced adherence to the government's preferred message, and chilled research-related speech. As such, "Plaintiffs' 'personal stake' in their claims is easy to see." *See Thakur v. Trump*, 787 F. Supp. 3d 955, 992 (N.D. Cal. 2025), *aff'd in part, rev'd in part and remanded*, 176 F.4th 1187 (9th Cir. 2026). Defendants' objections that Plaintiffs are improper parties in this class action and that the Policy Class definition is "vague" for not including the institutional grantees both fail for similar reasons.

On Rule 23's actual requirements, Defendants have little to say. In fact, Defendants do not contest that the Termination Class satisfies typicality, numerosity, and adequacy, nor do they dispute that the proposed class definition is definite. They also do not dispute numerosity or adequacy as to the

Policy Class. Rather, Defendants repeatedly gesture at supposed variations among Plaintiffs' "factual circumstances," Opp. at 1–2, 13–14, but none of these minor factual differences can defeat class certification. Plaintiffs have all been injured by the same set of agency policies, and the central questions in this case are common legal issues that can be answered with common proof. For these reasons, courts routinely find cases challenging agency action under the Constitution and APA to be well-suited to class-wide resolution under Rule 23(b)(2). *See, e.g.*, *Thakur*, 787 F. Supp. 3d at 997–1004; *Am. Council of Learned Societies v. Nat'l Endowment for the Humans.*, No. 25-CV-3657, 2026 WL 1256545, at *65–69 (S.D.N.Y. May 7, 2026); *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1010–18 (N.D. Cal. 2025); *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1120–26 (N.D. Cal. 2025); *Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *13–16 (D.D.C. June 3, 2025). This Court should do the same here.

## ARGUMENT

### I. Plaintiffs have Article III standing.

Defendants repeatedly assert that Plaintiffs lack standing because they are not contractual "parties" to the grant agreements at issue. Opp. at 6–8. But, as Plaintiffs have already explained, Defendants' standing theory is baseless. ECF 90 ("PI Reply") at 5–7. The fact that Plaintiffs are not the named signatories to the grants is "immaterial" to whether they have Article III standing. *See Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 146 (D.D.C. 2025). That is because "traditional Article III standing rules do not change simply because the alleged harm occurred through the termination of a contract with a third party." *Thakur*, 787 F. Supp. 3d at 992. For the reasons set out below, Plaintiffs plainly have Article III standing under those traditional rules.[1]

#### A. Plaintiffs have established multiple concrete injuries in fact.

As always, the first question for standing is whether Plaintiffs "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted). This

[1] As Plaintiffs explained in their reply in support of their preliminary-injunction motion, Defendants' contract-based arguments also fail because the grant agreements at issue here are *not* contracts at all. *See* PI Reply at 4 n.4.

injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Here, just as in *Thakur*, "Plaintiffs' 'personal stake' in their claims is easy to see." *See* 787 F. Supp. 3d at 992. Defendants themselves acknowledge that the Plaintiffs with "grant terminations or denials" have suffered concrete injury. ECF 84 ("PI Opp.") at 13. And while Defendants quibble over the import of this harm, the injury more than suffices to establish standing in this action. *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) (In a class action, "[s]tanding exists if at least one named plaintiff meets the requirements.").

Regardless, all Plaintiffs here have established cognizable Article III injuries. To start, the "chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Am. Encore v. Fontes*, 152 F.4th 1097, 1113 (9th Cir. 2025). And here, Plaintiffs have demonstrated that they "are suffering present and ongoing injuries at the heart of what the First Amendment protects." *See Am. Ass'n of Univ. Professors v. Trump,* 815 F. Supp. 3d 907, 950 (N.D. Cal. 2025), *appeal dismissed*, No. 26-263, 2026 WL 1049175 (9th Cir. Feb. 11, 2026) ("*AAUP*"). As a result of the Challenged Policies and Terminations, Plaintiffs have been chilled from engaging in research-related speech out of fear of retaliation and/or forced to parrot the government's preferred viewpoints and script.[2]

Additionally, the funding limitations and ideological adherence imposed by the Challenged Policies also interfere with Plaintiffs' ability to fairly compete for NIH funding.[3] *See Int'l Longshoremen's & Warehousemen's Union v. Meese*, 891 F.2d 1374, 1379 (9th Cir. 1989); *Am. Ass'n of Physicians for Hum. Rts., Inc. v. Nat'l Insts. of Health*, 795 F. Supp. 3d 678, 693 (D. Md. 2025) (finding plaintiffs "suffered an injury in fact due to the loss of the Grant funds, and/or the inability to apply for new Grants, related to LGBTQI+ health"). And, finally, Plaintiffs have also established that

---

[2] Salles Decl. ECF 34 ¶¶ 19–22; Hatcher Decl. ECF 35 ¶¶ 12–13, 16–17, 22-23; Rosso Decl. ECF 36 ¶¶ 34, 36; Cohen Decl. ECF 37 ¶¶ 18, 27; Albarracín Decl. ECF 38 ¶¶ 16-17, 22-24; Moseson Decl. ECF 39 ¶¶ 23–24, 40–41; Pagkas-Bather Decl. ECF 40 ¶¶ 19, 21–22; Edwards Decl. ECF 42 ¶¶ 15; 17–18; Minor Decl. ECF 43 ¶¶ 22–23; Green Decl. ECF 44 ¶¶ 12–14, 17, 20; Jackson Decl. ECF 45 ¶ 18; Bell Decl. ECF 46 ¶¶ 17–19, 21, 28–29, 31–33; Smith Decl., ECF 80 ¶¶ 9–10, 12–15, 20–21.

[3] Salles Decl. ECF 34 ¶¶ 19–22; Hatcher Decl. ECF 35 ¶¶ 18–20, 24–25, 29–30; Albarracín Decl. ECF 38 ¶¶ 27–29; Moseson Decl. ECF 39 ¶ 42; Daw Decl. ECF 41 ¶ 22; Edwards Decl. ECF 42 ¶¶ 19–24; Green Decl. ECF 44 ¶ 19; Jackson Decl. ECF 45 ¶¶ 23–26, 28, 32; Smith Decl., ECF 80 ¶ 17.

the terminations, as well as changes that the Challenged Policies have forced them to make concerning the grants, have "harmed their reputations, disrupted their projects, and required them to expend time and resources seeking alternative sources of funding." *See Thakur*, 176 F.4th at 1196.[4] All these injuries support finding that Plaintiffs have Article III standing here.

**B. Neither Article III nor Rule 23 require inclusion of the institutional grantees.**

Defendants do not meaningfully dispute that the Challenged Policies and Terminations have concretely harmed Plaintiffs in multiple and distinct ways. Instead, they assert that those harms are simply irrelevant because Plaintiffs are "neither parties [to] nor intended third-party beneficiaries" of the grant agreements at issue. Opp. at 7. That is wrong.

Plaintiffs suffer cognizable Article III injuries regardless of whether they are formal parties to the grant agreements. As in *Thakur*, Plaintiffs here are not seeking to enforce their universities' contract rights; they "assert their *own* rights" under the First Amendment and APA, because "*[t]hey* are the ones who engaged in the protected speech, and *their* research is the target of the unreasoned arbitrary termination of funding." *See Thakur*, 787 F. Supp. 3d at 994 (emphasis added); *see also President & Fellows of Harvard Coll. v. U. S. Dep't of Health & Hum. Servs.,* 798 F. Supp. 3d 77, 110–11 (D. Mass. 2025) (while "Defendants' actions ultimately impact grant agreements that are awarded, in name, to the [University] . . . the notion that the resultant harm to professors and graduate students is at best speculative or attenuated is divorced from the reality of how federal research grants function").

The cases on which Defendants rely, Opp. at 6–7, by contrast, are *breach-of-contract* cases in which the plaintiffs specifically sought contractual remedies.[5] Nothing about those cases suggests that, in *non-contract* cases, plaintiffs who have suffered concrete Article III injury nevertheless lack standing because they are not contractual parties or third-party beneficiaries. For good reason, numerous courts

---

[4] Cohen Decl. ECF 37 ¶ 18; Albarracín Decl. ECF 38 ¶¶ 16–17; Moseson Decl. ECF 39 ¶¶ 23–24, 36; Edwards Decl. ECF 42 ¶ 17; Minor Dec. ECF 43 ¶ 23; Green Decl. ECF 44 ¶¶ 13, 17; Bell Decl. ECF 46 ¶¶ 20, 32.

[5] The only exception, *Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19-CV-00910 (OAW), 2022 WL 4080325, at *1–2 (D. Conn. Apr. 1, 2022), concerned a *pro se* plaintiff who did not identify any facts showing that the agency's termination of a grant with state and local government entities had harmed him. Here, by contrast, Plaintiffs have submitted more than a dozen unrebutted declarations establishing that the Challenged Policies have caused them to suffer multiple forms of concrete injury.

have roundly rejected Defendants' untenable position. In *Nat'l Ass'n for Advancement of Colored People v. United States*, for example, the court observed that "[m]any well-reasoned opinions have concluded that a plaintiff's non-contractee status does not impair or impede standing where the plaintiff otherwise meets the essential standing requirements." No. 8:25-CV-00965-JRR, 2026 WL 1265450, at *19 (D. Md. May 8, 2026). And, in *AAUP*, the court concluded that, "to adopt Defendants' extreme position would eviscerate the courts' ability to redress government conduct that deliberately sought to chill speech by pressuring third parties." 815 F. Supp. 3d at 952. Thus, Defendants' invocation, Opp. at 7, of the "third party standing doctrine is inapplicable." *See Thakur*, 787 F. Supp. 3d at 994.

For similar reasons, this Court should reject Defendants' puzzling argument that this case "fails to serve the purposes of [a] class action," which merely repackages the government's flawed standing theory under the guise of a Rule 23 objection. *See* Opp. at 8–9. Again, the fact that "the proposed class [does] not include the institutions that actually hold the contracts," Opp. at 9, is entirely "immaterial" to whether this case should proceed as a class action. *See Perkins Coie LLP*, 783 F. Supp. 3d at 146. Plaintiffs challenge unconstitutional viewpoint-based discrimination, unreasonable restrictions on government funding meant to support private speech, compelled speech, and retaliation, and unlawful agency actions that have caused them, and the class members, concrete harm; they do not seek to enforce or nullify any specific contract. Courts have recognized that such claims are well-suited to class treatment. *See, e.g.*, *Thakur*, 787 F. Supp. 3d at 998–1004; *Am. Council of Learned Societies*, 2026 WL 1256545, at *65–69.

Moreover, Plaintiffs do not ask this Court "to remedy a violation of private law (e.g., a breach of contract)," but "to remedy the violation of a public law," namely, the APA and the Constitution. *See Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 679 (9th Cir. 2007). Put differently, the relief that Plaintiffs seek here is injunctive relief, a stay, and ultimately vacatur—all of which can be entered on a class-wide basis. *See* ECF 33-1 (detailing proposed preliminary injunctive relief). Nothing about that class-wide relief will turn on any institutional grantee or their specific contract with NIH.[6] Thus,

[6] As in *Thakur*, "[t]he grantees under the relevant contracts remain free to assert their breach of contract claims in another action, should they choose to do so." *Thakur*, 787 F. Supp. 3d at 1000.

contrary to Defendants' repeated assertions, there simply is no "risk of inconsistent adjudication." Opp. at 9.

**II. The Policy Class definition is sufficiently definite.**

This Court should also reject Defendants' argument that Plaintiffs' proposed Policy Class definition is "impermissibly vague," which yet again recycles the government's mistaken theory that the grants at issue belong only to the universities, not the researchers. Opp. at 9–10.[7]

Initially, contrary to Defendants' insinuations, the Ninth Circuit has held that Rule 23 imposes no "free-standing" ascertainability or administrative-feasibility requirement. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018) (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124–25 (9th Cir. 2017), *abrogated on other grounds by Healy v. Milliman, Inc.*, 164 F.4th 701, 709 (9th Cir. 2026)); *see also, e.g.*, *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1116 (9th Cir. 2021) ("Rule 23 never mentions administrative feasibility and . . . a standalone feasibility requirement for class certification could render other Rule 23 provisions, such as the likely difficulties in managing a class action, superfluous." (citation modified)). This is especially true in cases, like this one, involving Rule 23(b)(2) classes, where "[a] precise class definition is less important." *Conant v. McCaffrey*, 172 F.R.D. 681, 693 (N.D. Cal. 1997); *see, e.g.*, *Nat'l TPS All. v. Noem*, 830 F. Supp. 3d 939, 958 (N.D. Cal. 2025) (noting that "courts in the Ninth Circuit have concluded that the implied ascertainability requirement does not apply to Rule 23(b)(2) classes"); *In re Tesla Advanced Driver Assistance Sys. Litig.*, 350 F.R.D. 119, 136–37 (N.D. Cal. 2025); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015).

In any event, even if the Ninth Circuit did recognize such a requirement, Plaintiffs' proposed Policy Class definition *is* exactly as Defendants contend it should be: "precise, objective, and presently ascertainable." *See* Opp. at 10 (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)). Plaintiffs seek to certify a class of "[a]ll persons who have an existing NIH grant and/or who applied or will apply for an NIH grant whose grant or application is subject to termination, denial, rephrasing, or renegotiation based on the Challenged Policies; and all persons who would apply for an

[7] Because Defendants do not object to Plaintiffs' proposed Termination Class definition, any challenge to that class definition is waived. *See, e.g., Mobley v. Workday, Inc.*, 740 F. Supp. 3d 796, 811 n.4 (N.D. Cal. 2024) (argument "not discussed in the briefing . . . has been waived").

NIH grant but for the Challenged Policies." ECF 52 at 7. The definition is clear as to whom it covers: Researchers with NIH grants or grant applications that are impacted by the Challenged Policies, as well as researchers who will apply and be subject to the Challenged Policies, or would have applied for such grants but for the Challenged Policies. Such a class definition, which is pinned to objective criteria, "is sufficiently definite to conform to Rule 23." *See Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) (holding that a class definition that could be read "to include every male person in the world" was not "so vague as to preclude certification").

Defendants nevertheless assert that the class definition "hinges on a possessive term that is impermissibly vague." Opp. at 9. In their telling, a "straightforward reading" of the proposed Policy Class definition "would exclude [Plaintiffs]" because the grants at issue are not "*their* grants," but instead belong to "various educational institutions." *Id.* If Plaintiffs are included in the class, Defendants continue, then anyone "impacted in some way by a grant"—however tangentially—is part of the Policy Class. *See id.*

This Court should reject Defendants' attempt to inject vagueness into the proposed Policy Class definition by artificially parsing its terms instead of applying its obvious and ordinary meaning. Indeed, nothing about Defendants' convoluted reading is "straightforward." The Ninth Circuit reads the class definition as Plaintiffs do: In *Thakur*, for example, the court stated that the plaintiffs "applied for and received multi-year research grants" and described these grants as "*Plaintiffs'* research grants," even though there too the grant agreements were between the federal government and institutional grantees. 176 F.4th at 1193–94 (emphasis added). *And so does the NIH*: In communications to Plaintiffs, the agency often described the research grant at issue as "*your* award," "*your* grant," or "*your* application." *See, e.g.*, Salles Decl., Exh. 2, ECF 34-2 at 2 (emphasis added); Edwards Decl., Exh. 1, ECF 42-1 at 2 (emphasis added); Minor Decl., Exh. 6, ECF 43-6 at 2 (emphasis added). If the agency itself refers to the grants at issue as the *researchers'* grants, it strains belief that the class definition's use of a "possessive term" can be "impermissibly vague."[8]

[8] Defendants appear to quote the class definition in *Thakur* when confusingly asserting that Plaintiffs' class definition is vague because "Plaintiffs are not 'UC researchers[] whose research grants have been [affected].'" Opp. at 10.

Furthermore, even if the Court were to find the proposed class definition imprecise or overbroad, the proper remedy under Rule 23 would be to revise or narrow the definition, not to deny certification. *See* Fed. R. Civ. P. 23(c)(1)(C); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc) ("[T]he problem of a potentially over-inclusive class can and often should be solved by refining the class definition rather than by flatly denying class certification." (internal quotations omitted)).

**III. Plaintiffs satisfy Rule 23's requirements.**

Defendants do not dispute that Rule 23's numerosity and adequacy requirements are met. Instead, they contend that Plaintiffs have not sufficiently established typicality for the Policy Class, and have not established commonality or the availability of class-wide relief for both the Policy and Termination Classes. Opp. at 10–14. None of their arguments have merit.

**A. Typicality.**

Defendants concede that the typicality requirement is satisfied for the Termination Class. Opp. at 11–12. Plaintiffs also satisfy it as to the Policy Class.

Typicality is a "permissive standard[]" that is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The purpose of the typicality requirement is simply to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). That is precisely the case here. The Policy Class Plaintiffs' claims all arise from the same course of events—i.e., Defendants' adoption and enforcement of the Challenged Policies; their legal arguments are identical—i.e., the Challenged Policies constitute unconstitutional viewpoint-based discrimination, unreasonably restrict government funding for private speech, compel speech, and violate the APA's requirements; and they have all been "injured by the same course of conduct." *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Defendants argue that the Policy Class lacks typicality because Plaintiffs and class members suffered different, "loosely related" injuries. Opp. at 12. But Defendants' argument is rooted in the erroneous assumption that typicality requires an assessment of the individualized circumstances of each

putative class member. To the contrary, differences "in the nature of the specific injuries suffered by the various class members" from the same course of conduct are "insufficient to defeat typicality." *Armstrong*, 275 F.3d at 869; *see also, e.g.*, *Kidd v. Mayorkas*, 343 F.R.D. 428, 439 (C.D. Cal. 2023) (finding that factual differences across various ICE encounters were insufficient to defeat typicality where the plaintiffs "challenge[d] ICE's policies or practices on a systemwide basis"); *Rosas v. Baca*, No. CV 12-00428 DDP (SHX), 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) (typicality requirement met even if "the precise nature of the injuries suffered by the named Plaintiffs may differ from those suffered by other class members"). Indeed, if the Court were to accept Defendants' argument that all proposed class members must be injured by the policy in the *exact* same manner, typicality could rarely, if ever, be satisfied. *See Brown v. Kelly*, 244 F.R.D. 222, 230 (S.D.N.Y. 2007).

**B. Commonality.**

Defendants' commonality arguments fail for largely the same reasons. The fact that class members may have differing "individual factual circumstances," Opp. at 13, does not defeat commonality under Rule 23. To the contrary, "[w]here the circumstance of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012). And the Ninth Circuit has made clear that this is particularly true when class members challenge systemwide policies and practices. That is because determining whether policies and practices are unlawful does not require a court "to determine the effect of those policies and practices upon any individual class member . . . or to undertake any other kind of" fact-intensive inquiry as to those individuals. *Parsons*, 754 F.3d at 678.

In *Parsons*, for example, the plaintiffs sought certification of a class and subclass of people in prison who alleged that various policies and practices governing their detention conditions exposed them to a serious risk of harm in violation of the Eighth Amendment. *Id.* at 662. In rejecting the government's challenge to commonality, the court explained that dissimilarities among class members' injuries did not defeat commonality because the plaintiffs were not challenging any individual deficiencies in care; rather, the members of the class were united by a shared exposure to government policies and practices that put them at a risk of harm. *See id.* at 678. So too here. As in *Parsons*, the Challenged Policies are

"unlawful as to every [class member] or [they are] not," regardless of the precise injuries that each class member suffers. *See id.*

Defendants' other purported "commonality roadblocks" are all unpersuasive. Opp. at 12. For example, they contend without any citation to authority that commonality does not exist because Plaintiffs challenge multiple policy actions that "were in place at different times." *Id.* Not so. Plaintiffs challenge *all* those policies and the terminations made pursuant to those policies as violating the First Amendment and/or APA, and so this Court can resolve Plaintiffs' claims and legal arguments "in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). But even if this Court were to separately evaluate each discrete policy's legality, these too are common questions that apply broadly across substantial portions of the class.[9]

Defendants' contention that arbitrary and capricious claims are "inappropriate" for class-wide treatment fares even worse. Courts in this District regularly certify classes raising arbitrary and capricious claims. *See, e.g.*, *Thakur*, 787 F. Supp. 3d at 1003; *Garro Pinchi*, 813 F. Supp. 3d at 1014; *Pablo Sequen v. Albarran*, 810 F. Supp. 3d at 1122; *see also, e.g.*, *Healthy Futures of Texas v. Dep't of Health & Hum. Servs.*, 326 F.R.D. 1, 7 (D.D.C. 2018). Whether a policy is arbitrary and capricious under the APA is a paradigmatic common question that can be answered by class-wide proof—namely, the administrative record—and so it is "classically suited for classwide adjudication." *Thakur*, 787 F. Supp. 3d at 967; *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 135 (E.D.N.Y. 2020) (noting that arbitrary and capricious claims are "well-suited to class adjudication"). Defendants' argument to the contrary relies solely on *Padilla v. U.S. Immigr. & Customs Enf't,* 354 F. Supp. 3d 1218 (W.D. Wash. 2018), which did not involve arbitrary and capricious claims at all, but instead concerned APA "unreasonable delay" claims, *see* 5 U.S.C. § 706(1)—an entirely distinct administrative-law doctrine that requires a highly "fact-dependent inquiry," *Padilla*, 354 F. Supp. 3d at 1227.

---

[9] Defendants also flatly misrepresent Plaintiffs' complaint in asserting that Plaintiffs' "First Amendment claim only applies to terminations based on those Executive Orders that Plaintiffs allege consider or target viewpoint." Opp. at 12; *but see, e.g.*, Am. Compl., ECF 78 ¶ 202 (alleging that "[t]he *Challenged Policies* violate the First Amendment by imposing viewpoint-based bars or penalties on government funding designed to facilitate private speech" (emphasis added)); *id.* ¶ 214 (same); *id.* ¶ 246 (same); *id.* ¶ 86 (defining "Challenged Policies").

In sum, commonality is satisfied here because the central legal questions are "common to all class members, and the answer[s] [are] the same for each." *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1204 (N.D. Cal. 2017); *see also Wal-Mart*, 564 U.S. at 369 ("even a single [common] question" is enough to find commonality). Specifically, the questions whether the Challenged Policies and Terminations "constitute unconstitutional viewpoint discrimination," unreasonably restrict government funding for private speech, compel speech, and/or violate the APA can be answered "on a classwide basis." *See Thakur*, 787 F. Supp. 3d at 1001. The Court should therefore find that Plaintiffs have met Rule 23(a)'s requirements.

**C. Availability of class-wide relief under Rule 23(b)(2).**

Finally, this Court should reject Defendants' spurious Rule 23(b)(2) arguments, which almost entirely duplicate their erroneous commonality and typicality arguments.

Plaintiffs have established that Defendants have "acted or refused to act" on grounds that apply to the proposed classes "as a whole" by adopting the Challenged Policies and terminating grants under the Challenged Policies. Fed. R. Civ. P. 23(b)(2). Defendants vaguely speculate that "class members belong to various subset groups" and so they will require "distinct remedies" in violation of Rule 23(b)(2). But the relief that Plaintiffs seek—an injunction, declaration, and APA stay and ultimately vacatur—all "would provide relief to each member of the class." *See Wal-Mart*, 564 U.S. at 360; *see also Nat'l TPS All. v. Noem*, 830 F. Supp. 3d 939, 964 (N.D. Cal. 2025) (noting that "courts have routinely certified Rule 23(b)(2) classes seeking vacatur relief under the APA"). This relief can be accomplished through a single order. In short, this case requests "classic and routine Rule 23(b)(2) relief." *See Thakur*, 787 F. Supp. 3d at 986. This Court should therefore grant class certification.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion and certify the proposed classes.

Dated: October 28, 2026

Respectfully submitted,

*/s/ Neil K. Sawhney*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NOTHERN CALIFORNIA**
NEIL K. SAWHNEY (CA Bar No. 300130)
nsawhney@aclunc.org
GRAYCE ZELPHIN (CA Bar No. 279112)
gzelphin@aclunc.org
CHESSIE THACHER (CA Bar No. 296767)
cthacher@aclunc.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Attorneys for Plaintiffs*